**UNITED STATES of America,**
**Plaintiff,**

v.

**KORMEL, INC., R. L. Knight,**
**Defendants.**

**Crim. No. 13527.**

United States District Court
D. Nevada.

May 1, 1964.

John W. Bonner, U. S. Atty., Reno, Nev., for plaintiff.

Thomas A. Latta, San Francisco, Cal., for Securities and Exchange Commission.

Ralph M. Tucker, Reno, Nev., for defendants.

THOMPSON, District Judge.

This proceeding was instituted by the filing of a Petition for Order to Show Cause Why Defendants Should not be Punished for Criminal Contempt. The Order to Show Cause was entered and a trial followed before Honorable John R. Ross, United States District Judge, now deceased, sitting without a jury. The parties have since filed their written consent that the case should be decided by the undersigned on the transcript of the proceedings heretofore had, the evidence and testimony heretofore received and the briefs filed. Having duly considered the same, the Court finds the following facts to be established by the evidence beyond a reasonable doubt.

## FINDINGS OF FACT

1. Only Kormel, Inc., a corporation, and R. L. Knight remain as defendants herein inasmuch as the proceedings have, in effect, been dismissed as to C. Marguerite Knight.

2. Kormel, Inc. is a Nevada corporation, the common capital stock of which was being sold and offered for sale by defendants to investors and prospective investors in the State of Nevada.

3. On June 12, 1961, this Court, in Civil Action No. 382, duly and regularly issued a Temporary Restraining Order, to which reference is hereby made, a true and correct copy thereof being annexed to plaintiff's petition herein. The defendants, at all times pertinent hereto, had proper notice and full knowledge of said Temporary Restraining Order and of the injunctive provisions thereof. Said Temporary Restraining Order was in full force and effect during all the occurrences and transactions hereinafter set forth.

4. On or about September 11, 1961, a pre-arranged meeting was held in Wells, Nevada, attended by defendant R. L. Knight, President of Kormel, Inc., and by Randi Glynn, an employee of Kormel, Inc. Also in attendance were the following named persons, among others, each of whom had, before June 12, 1961, entered into a stock subscription agreement for the purchase of the capital stock of Kormel, Inc. under which the subscription price had not been fully paid: Kenneth L. Taylor, Kenneth G. Thompson, Vernon H. Gauthier. Subsequent to the meeting, the defendants conferred with some of the subscribers individually. The purpose of the meeting and conferences was to persuade the stock subscribers to complete payment of the purchase price for Kormel, Inc. capital stock under their respective stock subscription agreements.

5. During the aforesaid meeting and conferences, the defendants made, among others, the following false, misleading and deceptive statements of material fact:

(a) That the Securities and Exchange Commission had printed a retraction of the restraining order apologizing to Kormel, Inc., and that the charges made in the civil action for injunction were untrue.

(b) That defendant R. L. Knight had made good contacts for the company during a recent trip to Saudi Arabia which would be helpful in the sale of drugs.

(c) That certain drug formulas contained in a publication called the Kormel Therapeutic Index (Ex. 5) were Kormel formulas.

(d) That the company had been completely exonerated of all charges made by the Securities and Exchange Commission and a retraction had been printed in a Reno newspaper.

(e) That defendant R. L. Knight had met with great success on a recent trip to Saudi Arabia for the purpose of making contacts and contracts concerning sales of drugs.

(f) That the loss of $35,000 reportedly suffered by the company the preceding year was not an actual loss but that the money had been used to purchase IBM machines, medical supplies, medical laboratory and equipment.

6. On or about August 28, 1961, defendants caused a letter (Ex. 3), announcing the scheduled meeting at Wells, Nevada on September 11, 1961, to be delivered to Kenneth Taylor by the United States mails.

7. On or about July 28, 1961, as a preliminary to the Wells, Nevada meeting and other anticipated meetings with subscribers and stockholders, defendants caused a letter (Ex. 21) to be delivered via the United States mails to subscribers for stock and stockholders of Kormel, Inc.

## OPINION

It is the principal contention of defendants that their conduct was not in violation of the Temporary Restraining Order because the Order did not specifically prohibit defendants from collecting the unpaid balance of the purchase price under pre-existing stock subscriptions contracts, and, because the Order related only to new offers of sale or sales of Kormel stock. While at first blush, this argument may seem appealing, it will not bear analysis.

It is true that an injunctive order should be specific and should, in as clear and concise language as is possible under the circumstances, define the conduct prohibited. Schwegmann Bros. Giant Super Mkts. v. Hoffman-La Roche, Inc., 221 F.2d 326 (5 CCA1955); Brumby Metals, Inc. v. Bargen, 275 F.2d 46 (7 CCA1960); Rule 65(d), F.R.Civ.P.

A person should not be answerable to criminal sanctions for conduct not plainly proscribed by the order alleged to have been violated.

Defendants' argument, however, misconceives the character of the Temporary Restraining Order issued by this Court on June 12, 1961. It does not purport to prohibit further sales or offers of sale of Kormel stock, let alone the collection of unpaid subscriptions under existing subscription contracts. What the order does prohibit is further fraud in a sale or offer of sale of the stock.

The authority of the Court is limited to restraining "acts or practices which constitute or will constitute a violation" of the Securities Act of 1933 (15 U.S.C. § 77t(b). The violations defined in the Act (15 U.S.C. § 77q) rest upon use of the mails and the facilities of interstate commerce for federal jurisdiction. The necessity of including the jurisdictional requirements in the phraseology of the restraining order certainly complicates it, but does not render it uncertain, unintelligible or ambiguous. What it quite plainly said to these defendants is: "Go on about your business but don't lie. You have, in the past, used fraudulent representations in sales and offers of sale of your securities. Don't do it any more." That the restraining order was correctly so understood by the defendants is fully established by the letter of explanation to the shareholders disseminated under date of June 23, 1961 (Ex. 1).

Section 77q itself has been declared to be sufficiently concise and clear to support sanctions of fine and imprisonment upon criminal prosecutions for its violation. Coplin v. United States, 88 F.2d 652 (9 CCA1937).

If the statute itself is thus characterized, it cannot be said that a restraining order substantially patterned after the statute falls for ambiguity and lack of precision.

278

■■ Representations made to an investor to induce him to continue payments under an existing stock subscription contract are made "in the offer or sale" of the stock within the clear meaning of the Act and the Order. A sale under the type of subscription contract here involved was not complete until the whole purchase price was paid and upon full payment, the company would deliver the shares purchased. United States v. Robertson, 181 F.Supp. 158 (S.D.N.Y. 1959); Cf. SEC v. North American Finance Co., 214 F.Supp. 197 (D.C. Ariz.1959).

It is not persuasive to suggest that the subscribers, in making additional payments under the subscription contracts, would be doing only what they were already legally bound to do. In view of the injunction action brought by the SEC which resulted in the entry of a permanent injunction, by consent, against the defendants, it is at least likely that the contracts were voidable. Further, the contracts contained a provision for forfeiture of payments already made if the full subscription price were not paid, rather than an express promise to pay the full sum, and from this viewpoint, were in the nature of conditional unilateral contracts rather than bilateral contracts. In any event, it is the opinion of this Court that the collection of the purchase price for stock being sold is an integral element of the sales transaction and is clearly encompassed in the statutory language "in the offer or sale" of the stock, language also used in the restraining order.

■ The evidence proves beyond a reasonable doubt that defendants wilfully and knowingly made serious misrepresentations of material facts in the sale of Kormel stock, using the mails in furtherance thereof, and that such conduct constituted wilful and deliberate contempt and defiance of the Temporary Restraining Order issued June 12, 1961.

The defendants, Kormel, Inc. and R. L. Knight, are hereby adjudged guilty of contempt. The defendants are hereby ordered to appear before this Court on Friday, May 15, 1964 at ten o'clock a. m., in the United States Post Office Building at Reno, Nevada, for imposition of sentence, and, in default of such appearance, a bench warrant shall issue.