857 F.2d 646
 Fed. Sec. L. Rep. P 94,028, 12 Fed.R.Serv.3d 810
 Phillip D. ROBERTS; Lynn Roberts; Denny Delk; Karen Delk;
William J. Freschi, on behalf of themselves and
all others similarly situated,
Plaintiffs/Appellants/Cross-Appellees,
v.
PEAT, MARWICK, MITCHELL & CO., Defendant/Appellee/Cross-Appellant,
and
Houston Harbaugh, P.C., Defendant/Appellee.
 Nos. 87-2106, 87-2128 and 87-2278.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 15, 1988.
Decided Sept. 19, 1988.
 
 Solomon B. Cera, David B. Gold, P.C., San Francisco, Cal., for plaintiffs/appellants/cross-appellees.
 Richard N. Patterson, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant/appellee/cross-appellant.
 James J. Corbelli, Lillick, McHose & Charles, San Francisco, Cal., for defendant/appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before SCHROEDER* and BOOCHEVER, Circuit Judges, and STEPHENS,** District Judge.
 PER CURIAM:
 
 OVERVIEW
 
 1
 Plaintiffs are a class of investors who purchased interests in limited partnerships offered by an array of individuals and corporate entities. Defendants are accountants and attorneys who provided professional services to the partnerships. When the value of the partnerships failed to materialize, the investors brought suit under federal and state securities laws. The district court granted summary judgment and dismissal for the defendants on the federal securities claims, dismissed the investors' remaining state claims, and denied cross motions for sanctions. 670 F.Supp. 1466. The investors appeal the summary judgment and dismissal of the federal claims, and both parties appeal denial of their respective motions for sanctions. We affirm in part, reverse in part, and remand.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 Between 1980 and 1982 the investors purchased numerous shares in limited partnerships. The partnerships were organized to produce oil and gas through oil recovery technology which increased production of otherwise nonproductive oil-bearing property and were also to serve as tax shelters. The partnerships were organized and sold by a number of corporate entities and individuals, including Werner Heim as an individual. Some of these entities served as general partners in the partnerships. The defendants include the accounting firm of Peat, Marwick, Mitchell & Co. ("Peat, Marwick") and the law firm of Houston Harbaugh, P.C., ("Houston Harbaugh"), each of which rendered professional services to the partnerships.[1] Peat, Marwick provided accounting services to the partnerships and issued audit reports. Houston Harbaugh prepared title opinions on real properties purchased by the partnerships.
 
 
 3
 The total price of a partnership unit was $150,000. This commitment consisted of $12,500 paid in cash upon initial subscription, two $12,500 payments on short-term promissory notes for each year of the two immediately subsequent years, and $112,500 payable in three installments due in the subsequent tenth, eleventh and twelfth years. Within three years of buying into the partnership, the oil technologies failed to materialize and the investors brought suit under the Securities Exchange Act of 1934, section 10(b) and Rule 10b-5, alleging fraud in the sale of the partnerships as securities.
 
 
 4
 The complaint against Peat, Marwick alleged: (a) the oil recovery technologies were unproven and, as a result, the partnerships never had the value represented, (b) the limited partnerships purchased mineral properties from Werner Heim and his corporate alter egos at over-inflated prices, and (c) the partnerships amounted to a scheme to defraud which Peat, Marwick knew of or should have been aware of. An additional claim alleged Peat, Marwick aided and abetted a section 10(b) violation by participating in partnership offering memoranda which contained false and misleading statements. With respect to Houston Harbaugh, the investors alleged: (a) it prepared false and misleading title opinions to some of the partnership properties, and (b) it knew and failed to disclose or recklessly disregarded the fact that the properties were transferred between various entities to conceal Heim's previous ownership, and that the properties were not acquired in arms-length transactions. Finally, the investors asked for Fed.R.Civ.P. 11 sanctions in response to Peat, Marwick's own motion for Rule 11 sanctions.
 
 
 5
 The district court granted summary judgment in favor of Peat, Marwick on the section 10(b) claim, finding it did not become involved with the transaction until after the investors made their initial partnership contributions, and that the installment payments on the short-term promissory notes were not separate investment decisions for which liability could attach for fraud in the sale of a security. On the aiding and abetting allegation, the district court dismissed with prejudice for failure to state a claim. The district court also dismissed with prejudice the separate section 10(b) claim against Houston Harbaugh, finding the title opinions were correct as a matter of law because they accurately identified the entity holding title to the property. Finally, both Peat, Marwick's motion and the investors' cross-motion for Rule 11 sanctions were denied.[2]
 
 
 6
 The investors appeal summary judgment on the main claims and the dismissals of their section 10(b) and aiding and abetting claims. Both Peat, Marwick and the investors appeal denial of their respective motions for sanctions.
 
 ANALYSIS
 1. Separate Purchases
 
 7
 The investors allege they read and relied on audit reports and Form K-1 tax returns prepared by Peat, Marwick prior to making payments on their short-term promissory notes. The reports were alleged to be materially false and misleading in violation of section 10(b) of the Exchange Act because they failed to disclose that the represented tax benefits would not be available in light of: (1) the dependent relationship between the technology licensor and the partnership, (2) the partnerships' lack of profit motive, (3) the long-term obligations' failure to qualify for tax deductions, (4) the unproven and hence overvalued technology, and (5) the commingling of partnership funds and assets. In their depositions, the investors stated that they relied on the documents prepared by Peat, Marwick before making payments to the partnerships under the short-term promissory notes. They also stated that had they known of the alleged section 10(b) violations, they would not have made the subsequent payments on their note obligations. However, the investors acknowledged that the reports by Peat, Marwick alleged to have been false and misleading were not prepared and read by them until after they made their initial subscription payments and after they executed the subscription, promissory note and partnership agreements.
 
 
 8
 The investors argue that each payment on the short-term notes constituted a separate purchase of securities. This argument is essential to the investors' case because by acknowledging that Peat, Marwick's reports and tax returns were not involved in the partnerships when they initially agreed to invest, they cannot establish fraud "in the purchase." Securities Investor Protection Corp. v. Vigman, 803 F.2d 1513, 1516-17 (9th Cir.1986). Without fraud in the purchase, there can be no liability on the part of Peat, Marwick for preparation of the documents because it could not assist fraud which occurred before its involvement.
 
 
 9
 We review summary judgments de novo, viewing the affidavits in the light most favorable to the nonmoving party. Jett v. Sunderman, 840 F.2d 1487, 1491 (9th Cir.1988). We review the district court's rulings on discovery for an abuse of discretion. Id.
 
 
 10
 To prevail on a cause of action for violation of section 10(b) of the Securities Exchange Act of 1934[3] and Rule 10b-5 of the Exchange Commission,[4] the investors must establish fraud "in connection with the purchase or sale of any security." This requirement actually contains two separate elements: "in connection with" and a "purchase or sale." The former requires a causal relationship between the fraud and the resulting injury. See Basic Inc. v. Levinson, --- U.S. ----, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); In re Financial Corp. of America Shareholder Litigation, 796 F.2d 1126, 1130 (9th Cir.1986) ("This 'transactional nexus requirement is a species of causation [in fact]' ") (quoting Hudson v. Capitol Mgmt. Intern., Inc., 565 F.Supp. 615, 622 (N.D.Cal.1983)). Cf. Ohashi v. Verit Indus., 536 F.2d 849, 853 (9th Cir.), cert. denied, 429 U.S. 1004, 97 S.Ct. 538, 50 L.Ed.2d 616 (1976) (the fraud alleged "was not in connection with the inducement nor concurrently with the exchange"). The latter, a "purchase or sale," requires an "actual purchase or sale of securities, or a contract to purchase or sell...." Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 735, 95 S.Ct. 1917, 1925, 44 L.Ed.2d 539 (1975). It is the purchase and sale element which is at issue here, and we view the Blue Chip Stamps contract requirement as controlling.
 
 
 11
 Section 3(a) of the 1934 Act defines "purchase" and "sale." Unless the context otherwise indicates, "purchase" includes "any contract to buy, purchase, or otherwise acquire," and "sale" includes "any contract to sell or otherwise dispose of." 15 U.S.C. Sec. 78c(a)(13) and (14). However, these definitions are of limited utility in ascertaining the scope of section 10(b) and Rule 10b-5. Precisely when a transaction is finalized, thereby creating an obligation to buy or sell securities, is a "question of intent for the finder of fact." Lewelling v. First California Co., 564 F.2d 1277, 1280 (9th Cir.1977). Thus, it is necessary to evaluate the factual situations in other cases to determine whether the purchase or sale requirement was met in this case.
 
 
 12
 The investors contend the sale requirement is met under the following three cases: Goodman v. Epstein, 582 F.2d 388 (7th Cir.1978), cert. denied, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); Stephenson v. Calpine Conifers II, Ltd., 652 F.2d 808 (9th Cir.1981), overruled on other grounds, In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349 (9th Cir.1987) (en banc), and United States v. Kormel, Inc., 230 F.Supp. 275 (D.Nev.1964). From these cases the investors argue that each payment on a promissory note constituted a separate purchase. We address these cases in succession to demonstrate why each is distinguishable under the contract theory established in Blue Chip Stamps.
 
 
 13
 In Goodman v. Epstein, 582 F.2d 388 (7th Cir.1978), holders of interests in limited parterships sued the general partners under section 10(b). The district court instructed the jury that each capital contribution by the limited partners did not constitute a separate "purchase." The Seventh Circuit Court of Appeals reversed, finding that each response to a call for more capital was a separate purchase and therefore "any material representations or omissions at that time were 'in connection with the purchase or sale' of a security, as required by Sec. 10(b) and Rule 10b-5." Id. at 414.
 
 
 14
 Goodman is distinguishable. The agreements to purchase the securities did not contain specific dates upon which specific amounts were due. The relationship was ongoing. Id. at 412. The partnership agreement allowed the general partners to make a "capital call" at any time for amounts "up to $3,000,000." Id. at 394 n. 14. The investment decisions were made over the course of the enterprise and were based upon its success. Id. at 412. That is, the investment decisions were made in futuro, not when the purchase agreement was executed. Id. at 413.
 
 
 15
 In the case at bar, the terms and commitments were unconditional in the subscription,[5] promissory note[6] and partnership agreements.[7] Unlike the Goodman investors who had the legal alternative not to contribute to a capital call, these investors were required to pay the promissory notes. Their commitments were unconditional. See Lewelling, 564 F.2d at 1280.
 
 
 16
 The investors also argue this case is controlled by Stephenson v. Calpine Conifers II, Ltd., 652 F.2d 808 (9th Cir.1981), overruled on other grounds, In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349 (9th Cir.1987) (en banc) (no implied private right of action under section 17(a) of the Securities Act of 1933). In Stephenson, investors in limited partnerships brought a section 10(b) action for failure to disclose information known by insiders. In reversing summary judgment for the insiders, we held as a matter of law that section 10(b) liability cannot attach where the actionable conduct took place after the last date of investment. Id. at 813 (citing Lewelling ). The actionable conduct must occur before the investors become "purchasers of securities as required by Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 [95 S.Ct. 1917, 44 L.Ed.2d 539] (1975)." Id. (citations omitted).
 
 
 17
 Stephenson does not control here because it did not involve a completed, enforceable transaction. The Stephenson partnership articles provided that a default on capital contributions would incur limited liability. Id. at 812-13. This made the investments conditional. Thus, every later capital contribution was a new investment decision and therefore a "separate purchase."
 
 
 18
 In the case at bar, the partnership agreements required unconditionally that the full subscription price of $150,000 be paid. These investors did not have a "call" option available for subsequent capital contributions. There was no limited liability upon default. When the investors irrevocably committed themselves by signing the purchase agreements and paying the initial obligation, a purchase and sale of securities took place. The commitment to future payments was unconditional. It is this contractual relationship which is the determinative factor under Blue Chip Stamps.
 
 
 19
 Finally, unlike United States v. Kormel, Inc., 230 F.Supp. 275, 278 (D.Nev.1964), where the subscription contract was not complete until the entire purchase price was paid, here there was an express promise upon the initial subscription to pay the full sum. It was not an installment contract with the sale complete when the last payment was made. The existence of a completed contract made the investors purchasers on the date of initial subscription. Despite the investors' argument to the contrary, this is the established law of the circuit. See Mosher v. Kane, 784 F.2d 1385, 1389 (9th Cir.1986), overruled on other grounds, In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349 (9th Cir.1987) (en banc) (the contractual relationship between the parties elevated them to the status of statutory purchasers); Walling v. Beverly Enter., 476 F.2d 393, 396 n. 5 (9th Cir.1973) (sufficient contractual relationship); Mount Clemens Indus., Inc. v. Bell, 464 F.2d 339, 346 (9th Cir.1972) (the lack of a contractual relationship is fatal to being afforded standing as a purchaser).
 
 
 20
 The fraud alleged on the part of Peat, Marwick occurred after the investors made their subscription agreements with the partnerships. Because the subsequent payments do not constitute separate purchases of securities, the investors' injury is not connected with the "purchase or sale" of a security under section 10(b). Since the purchase and sale occurred before the alleged fraud occurred, Peat, Marwick is absolved of section 10(b) primary liability. As a result, the district court properly granted summary judgment to Peat, Marwick on this claim.
 
 
 21
 2. Aiding and Abetting a section 10(b) Violation
 
 
 22
 The investors also charged Peat, Marwick with aiding and abetting a section 10(b) and Rule 10b-5 violation because it participated in partnership offering memoranda. The district court dismissed this allegation with prejudice for failure to state a claim. We review dismissal for failure to state a claim de novo. In Re Financial Corp. of America Shareholder Litig., 796 F.2d 1126, 1127 (9th Cir.1986). Our review is limited, however, to the contents of the complaint to see if it "appear[s] to a certainty" that the plaintiff would not be entitled to relief under any set of facts that could be proved. Id. at 1128.
 
 
 23
 In substance, the investors' fourth amended complaint recited the following facts, the truth of which is presently assumed: (1) the offering documents indicated that Peat, Marwick agreed to perform accounting services for the partnerships; (2) before Peat, Marwick agreed to perform future services, it reviewed the offering memoranda and investigated partnership management, learning of fraudulent material; (3) through this process, Peat, Marwick participated in drafting the memoranda or had effective control over the contents by consenting to the use of its name; (4) Peat, Marwick audited and opined on the financial statements of, and prepared the tax returns for the partnerships for the years ending December 31, 1981, December 31, 1982, December 31, 1983, and December 31, 1984; (5) these opinions were disseminated to the investors; and (6) by assisting in the preparation of the memoranda and its investigation of the management of the partnerships, Peat, Marwick knew in what respects the memoranda were false and misleading, and furthered the fraud by consenting to inclusion of its name.
 
 
 24
 Aiding and abetting is itself a violation of section 10(b) and Rule 10b-5. The elements for a cause of action for aiding and abetting a section 10(b) violation are: (1) the existence of an independent wrong, (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it, and (3) substantial assistance in the wrong. Jett, 840 F.2d at 1495; Harmsen v. Smith, 693 F.2d 932, 943 (9th Cir.1982), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). Defendants may be liable for aiding and abetting based on their silence if they have a duty to disclose knowledge that would be material to investors. Strong v. France, 474 F.2d 747, 752 (9th Cir.1973). The secondary violator's duty to disclose may arise from a "knowing assistance of or participation in a fraudulent scheme." Harmsen, 693 F.2d at 944 (quoting Strong, 474 F.2d at 752).
 
 
 25
 The investors have pled an independent wrong--a section 10(b) violation by other entities. In addition, investors have alleged that Peat, Marwick knew of the alleged violation but allowed the use of its name in offering memoranda despite that knowledge. These facts may be sufficient to create a duty to disclose in Peat, Marwick. Investors can reasonably be expected to assume that an accounting firm would not consent to the use of its name on reports and offering memoranda it knew were fraudulent. Thus, it may be reasonable to expect an accountant to disclose fraud in this type of situation, where the accountant's information is superior and the cost to the accountant of disclosure is minimal. See Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1045 (11th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987).
 
 
 26
 Peat, Marwick relies on Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490 (7th Cir.1986). That case, however, involved a summary judgment, not a motion to dismiss. No evidence was produced by the plaintiffs of any intent to deceive by the defendants, that the defendants had even seen any of the selling documents during the relevant period, that they intentionally or recklessly gave bad advice to the sellers, or that their names were used in the prospectus. Id. at 493-96. In this case, however, plaintiffs have sufficiently alleged knowledge on the part of Peat, Marwick to create a possible duty to disclose information concerning the alleged fraud.
 
 
 27
 Similarly, whether Peat, Marwick knew of and substantially assisted in the wrong depends on the circumstances. See S.E.C. v. Rogers, 790 F.2d 1450, 1460 (9th Cir.1986). The investors' complaint states a cause of action because it alleged that the investors relied on Peat, Marwick's reputation when deciding to invest and that they would not have invested had Peat, Marwick disclosed the alleged fraud. See Rudolph, 800 F.2d at 1044-45.
 
 
 28
 The complaint is sufficiently pled. Whether the cause of action for aiding and abetting is proven or can survive a motion for summary judgment is a factual issue to be determined by the district court. In light of the contents of the complaint, we hold the district court erred in prematurely dismissing the aiding and abetting claim for failure to state a claim.
 
 
 29
 3. Houston Harbaugh's section 10(b) Violation for Title Opinions
 
 
 30
 The investors' complaint also alleged that the law firm of Houston Harbaugh prepared title opinions for property purchased by some of the partnerships which appeared in offering memoranda. Houston Harbaugh allegedly knowingly failed to indicate in the opinions that an interested party, Werner Heim, sold the property to the partnerships at inflated prices. This failure was alleged to be a violation of section 10(b) and Rule 10b-5. It was also alleged that Houston Harbaugh failed to reveal its conflict of interest with the partnerships because Heim was its client with interests adverse to the partnerships. The district court dismissed these allegations for failure to state a claim. The investors do not contend the title opinions were inaccurate. Rather, the investors allege the title opinions were misleading since they failed to disclose the interest of Heim in the property and the law firm's other representation of Heim.
 
 
 31
 The title opinions should have contained the omitted information only if the law firm had a duty to disclose it. The court determines whether a duty to disclose exists by examining five non-exclusive factors first enumerated by this court in White v. Abrams, 495 F.2d 724, 735-36 (9th Cir.1974). The court examines:
 
 
 32
 1. the relationship of the defendant to the plaintiff;
 
 
 33
 2. the defendant's access to information as compared to the plaintiff's access;3. the benefit that the defendant derives from the relationship with the plaintiff;
 
 
 34
 4. the defendant's awareness of plaintiff's reliance; and
 
 
 35
 5. the defendant's activity in initiating the securities transaction in question.
 
 
 36
 Pegasus Fund, Inc. v. Laraneta, 617 F.2d 1335, 1340 (9th Cir.1980) (citing White, 495 F.2d at 735-36).
 
 
 37
 Unlike the allegations with respect to Peat, Marwick, no duty with respect to Houston Harbaugh could possibly be established by the facts alleged in the complaint. First, Houston Harbaugh was retained solely to determine marketability of title by reviewing the record of title; marketability alone was relevant to the duty owed the partnerships. The omitted information would not have provided the investors with information about the state of title affecting the partnerships' ability to purchase the property, albeit at an inflated price. Second, both parties had equal access to the records examined.[8] Finally, the defendants were in no way responsible for initiating these securities transactions.
 
 
 38
 Houston Harbaugh's duty under section 10(b) does not extend as far as the investors claim. Even if the facts alleged are true, Houston Harbaugh's duty cannot extend to disclosing the information the investors wanted when it was hired only to determine marketability of title. Otherwise, a party could be liable for unlimited information even though it would be well beyond the matter for which it was retained.
 
 4. The Motions for Sanctions
 
 39
 After Peat, Marwick moved for Rule 11 sanctions, the investors filed a cross-motion for sanctions, arguing that Peat, Marwick's Rule 11 motion violated Rule 11. The Rule 11 drafters' nightmare has become a reality. See 101 F.R.D. 161, 200 (1984) (committee reporter described "Kafkaesque dream" of motions to sanction attorneys for making frivolous motions for sanctions).
 
 
 40
 Our standard of review on whether the conduct at issue violated Rule 11 is de novo. Golden Eagle Dist. Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir.1986). We review factual determinations concerning the conduct under a clearly erroneous standard, while the appropriateness of the sanction imposed is reviewed for abuse of discretion. Id. The standard for appraising the actions of an attorney does not require proof of bad faith, but instead objectively looks to whether the signing attorney acted reasonably under the circumstances. Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1159 (9th Cir.1987).
 
 
 41
 Rule 11's purpose was not to chill zealous advocacy. See In re Yagman, 796 F.2d 1165, 1182 (9th Cir.1986), amended, 803 F.2d 1085, cert. denied, --- U.S. ----, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). The Rule addresses filings which are not grounded in law or fact or filings used to harass. Hudson, 836 F.2d at 1159. It should not itself become a retaliatory device. The district court correctly denied both Rule 11 motions.
 
 CONCLUSION
 
 42
 Summary judgment to Peat, Marwick on the separate purchase theory was proper; dismissal of the aiding and abetting claim against Peat, Marwick was improper; dismissal of the claim against Houston Harbaugh was proper since it owed no further duty to disclose; and denial of both motions for sanctions was proper.
 
 
 43
 Costs are awarded to Houston Harbaugh against Roberts and otherwise each party is to bear its own costs.
 
 
 44
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 *
 Judge Schroeder was drawn to replace Judge Anderson who died on April 16, 1988
 
 
 **
 Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Many additional defendants, including the general partners, were named in the original complaint but are not parties here. Peat, Marwick, Mitchell & Co. and Houston Harbaugh, P.C., are the only defendants involved in this appeal. The plaintiffs consist of those individual investors who purchased an interest in the limited partnerships. The district court provisionally certified the suit as a class action
 
 
 [2]
 Other claims were also asserted and many other theories of liability were employed but these limited claims were the claims appealed
 
 
 [3]
 Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 
 
 [4]
 Rule 10b-5 of the Securities Exchange Commission, 17 C.F.R. Sec. 240.10b-5, provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 in connection with the purchase or sale of any security.
 
 
 [5]
 The subscription agreement [i.e., one example] provided:
 * * *
 I realize that the subscription price of each unit is $150,000, which is with full recourse to all of my personal assets.
 * * *
 For each full Unit indicated below, the undersigned delivers $12,500 in cash and two negotiable promissory notes in the face amount of $12,500 due on April 15, 1982, and April 15, 1983 respectively.
 Number of Units subscribed: [ONE]
 (not less than one)
 Amounts delivered:
 Check: [$ 12,500.00]
 Note due April 15, 1982 [$ 12,500.00]
 Note due April 15, 1983 [$ 12,500.00]
 Obligations due December 31, 1994, 1995 and 1996
 (Total: $112,500 per Unit) [$112,500.00]
 Total subscription price [$150,000.00]
 
 
 [6]
 The promissory note provided in part:
 Each maker and endorser hereby forever severally waives presentment, demand for payment, protest and notice of maturity, notice of protest or notice of dishonor of this note and all requirements necessary to hold each of them liable as makers and endorsers.
 
 
 [7]
 The partnership agreements provided in pertinent part, Article 3, Sec. 3.2(a) and (b):
 
 
 [3]
 2 Capital Contributions of Limited Partners
 (a) Limited Partners will be admitted to the Partnership solely by subscription and upon the sole approval of the General Partners. By executing the Subscription Agreement, each Limited Partner agrees to contribute to the Capital of the Partnership the amount indicated on his Subscription Agreement.
 (b) A Limited Partner subscribing to the Partnership will contribute to Partnership Capital the principal sum of $150,000 for each Partnership Unit subscribed. The capital contribution obligations of the Limited Partners shall be paid at the following times and in the following manner:
 $12,500 in cash on subscription
 $12,500 on or before April 15, 1982;
 $12,500 on or before April 15, 1983;
 $20,000 on or before December 31, 1994;
 $20,000 on or before December 31, 1995;
 $72,500 on or before December 31, 1996;
 All of these capital contribution obligations will be full recourse obligations of the Limited Partners. The installments due in 1982 and 1983 bear simple recourse interest at the rate of 11 1/2 percent per annum from the termination date. The installments due in 1994, 1995, and 1996 bear simple nonrecourse interest at the rate of 7 percent per year from the termination date.
 
 
 [8]
 The title opinions were based on examination of records in the Records of Deeds office