31 F.3d 772
 63 USLW 2078, Fed. Sec. L. Rep. P 98,331
 James G. MONROE and Penelope E. Monroe, individually and on
behalf of all similarly situated persons,
Plaintiffs-Appellants,
v.
Gary C. HUGHES; Thomas R. Hudson; and Deloitte & Touche,
fka Deloitte, Haskins & Sells, Defendants-Appellees.
 No. 92-35306.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided July 21, 1994.
 
 Karen Kennard, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, and Eric H. Fisher, Associate Gen. Counsel, New York City, for defendant-appellee Deloitte & Touche.
 Henry Kantor, Kantor and Sacks, Portland, OR, and Keith E. Tichenor, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, OR, for plaintiffs-appellants.
 Appeal from the United States District Court for the District of Oregon.
 Before: BROWNING, SCHROEDER and HALL, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 In this suit, investors in a failed company allege various Securities Act violations. The defendants include an accounting firm that provided the audit report accompanying the prospectus for the securities purchased by the plaintiffs. The plaintiffs claim that the accountants violated Sec. 11 of the Securities Act of 1933, 15 U.S.C. Sec. 77k, and Sec. 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), as well as SEC Rule 10b-5, 17 C.F.R. Sec. 240.10b-5. They also claim violations of Oregon's Blue Sky laws. The district court granted summary judgment for the accounting firm, holding that the complaint and supporting affidavits of plaintiffs do not establish any basis for recovery against the accounting firm under the securities laws. We affirm because we agree with the district court that the record does not disclose any issues of fact concerning whether the defendant's audit report contained material misstatements or omissions.
 
 
 2
 The plaintiffs-appellants, James and Penelope Monroe, represent a class of investors who purchased debentures offered by Hughes Homes, Inc., a privately owned retailer of manufactured housing based in Tacoma, Washington. Defendant-appellee, Deloitte and Touche, formerly known as Deloitte, Haskins and Sells, served as Hughes' independent auditor for the fiscal years ending June 30, 1987 and June 30, 1988. As part of its 1988 audit, Deloitte reviewed Hughes Homes' system of internal controls, the procedures used by the company to assure the reliability of its financial records, and found them flawed but functional. In September of that year, Deloitte's auditors drafted a letter advising Hughes' management of the internal control weaknesses and conferred with the company's president and chief executive officer, and with the chief financial officer, about the weaknesses. Because the management took several months to respond, however, Deloitte did not issue its final management letter, including the management response, until July 26, 1989. The letter was distributed to Hughes' audit committee at that time.
 
 
 3
 In the meantime, Deloitte completed its audit and issued an unqualified audit report on September 9, 1988. The report represented that the financial statements of Hughes Homes were in compliance with Generally Accepted Accounting Principles (GAAP), and that Deloitte had conducted the audit according to Generally Accepted Auditing Standards (GAAS). As the district court noted, in drafting the report, Deloitte took into account the weaknesses in the internal controls by adjusting the scope of its audit to perform independent testing in order to verify the accuracy of the company's financial records.
 
 
 4
 In April, 1989, Hughes Homes, in conjunction with underwriter Paulson Investment Co., issued and sold 3,450 units of convertible subordinated debentures in common stock purchase warrants at $1,000 per unit, for a total of approximately $3.5 million. The prospectus for this sale included Deloitte's 1988 audit report as well as unaudited financial statements for the six-month period from June 30, 1988 through December 31, 1988. Deloitte had reviewed these statements, and the firm provided comfort letters to the underwriters in connection with the unaudited statements. The Monroes were among the purchasers of the debentures.
 
 
 5
 In May of 1989, Deloitte started field work for its 1989 audit, but soon noted a significant deterioration in the company's internal controls from the previous year. Ultimately Deloitte concluded it would be unable to issue an unqualified audit opinion for 1989 because of the now serious deficiencies in internal controls and because of the company's possible inability to continue as a going concern. Hughes Homes collapsed in the fall of 1989 and plaintiffs lost their investments.
 
 
 6
 The Monroes filed this action in 1990 against Deloitte and the officers of the company. The district court certified the class and thereafter granted summary judgment in favor of Deloitte. The Monroes appeal that judgment, which was certified pursuant to Federal Rule of Civil Procedure 54(b).
 
 Deloitte's Liability Under Sec. 11
 
 7
 Section 11 of the 1933 Act permits an action against an accountant based on material misstatements or omissions in a registration statement, but only as to those portions of the statement that purport to have been prepared or certified by the accountant. See Herman & MacLean v. Huddleston, 459 U.S. 375, 386 n. 22, 103 S.Ct. 683, 689 n. 22, 74 L.Ed.2d 548 (1983). Although issuers are held strictly liable under Sec. 11 for damages resulting from misrepresentations in a registration statement, an accountant has a due diligence defense; Sec. 11 therefore imposes a negligence standard for an accountant's liability. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 208, 96 S.Ct. 1375, 1388, 47 L.Ed.2d 668 (1976).
 
 
 8
 We have held that an accountant's good faith compliance with Generally Accepted Accounting Principles and Generally Accepted Auditing Standards discharges the accountant's professional obligation to act with reasonable care. See SEC v. Arthur Young & Co., 590 F.2d 785, 788-89 (9th Cir.1979). A corollary rule, however, is that compliance with GAAP and GAAS do not immunize an accountant who consciously chooses not to disclose on a registration statement a known material fact. Id.
 
 
 9
 The principal issues in this case are whether Deloitte should have stated in its 1988 audit report that it had found deficiencies in internal controls, and whether its failure to do so was a material omission actionable under Sec. 11. In answering these questions negatively, the district court relied upon standards that have been promulgated by the American Institute of Certified Public Accountants, which is the generally recognized authority in the field. In accordance with those standards, when Deloitte discovered problems with internal controls in its 1988 audit, it performed a limited evaluation of Hughes Homes' internal controls to determine how much reliance it, as the auditor, could place on the controls in performing its audit. See Adams v. Standard Knitting Mills, Inc., 623 F.2d 422, 431 (6th Cir.), cert. denied, 449 U.S. 1067, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980); AICPA, Professional Standards (CCH), AU Secs. 320.52, 642.10. After finding flaws in Hughes' internal controls, Deloitte expanded the scope of its audit by performing independent testing to verify the accuracy of the financial statements in accordance with AU Sec. 320.54; see also AU Sec. 320.52(b).
 
 
 10
 Deloitte's 1988 auditing team determined that three of the flaws in Hughes' internal controls constituted "reportable conditions." A reportable condition is an internal control weakness that, in the auditor's judgment, represents a "significant deficienc[y] in the design or operation of the internal control structure, which could adversely affect the organization's ability to record, process, summarize, and report financial data consistent with the assertions of management in the financial statements." AU Sec. 325.02. AICPA standards not yet in effect at the time of the audit require such conditions to be reported to the audit committee of the client.
 
 
 11
 Deloitte reported these conditions to Hughes' management and audit committee in accordance with the standards not yet in effect. Because the parties raise no genuine issue as to these facts, the district court correctly held that Deloitte followed applicable accounting standards and that its certifications to that effect in the audit report were correct.
 
 
 12
 Appellants, nevertheless, contend that the control deficiencies should have been noted on the audit report. Neither applicable professional standards, nor any legal authority of which we are aware, however, treat deficiencies in internal controls of a company as material to the audit report itself. Such deficiencies are reported to management because they represent matters of which management should be cognizant. Adams, 623 F.2d at 431 (primary function of internal controls is to signal to auditor the extent to which the auditor must test a client's records); see generally, S.E.C. v. World-Wide Coin Invs., Ltd., 567 F.Supp. 724, 750 (N.D.Ga.1983). We see no basis for holding that they should be regarded as material for purposes of Sec. 11, which concerns matters that would have significance to the purchaser of securities in understanding what is being purchased. See McMahan & Co. v. Wherehouse Ent., Inc., 900 F.2d 576, 579 (2d Cir.1990), cert. denied, 501 U.S. 1249, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991).
 
 
 13
 Appellants rely upon the affidavit of their expert witness, who stated that Hughes' internal control deficiencies amounted to more than reportable conditions, and actually constituted "material weaknesses." A material weakness is "a reportable condition in which the design or operation of the specific internal control structure elements do not reduce to a relatively low level the risk that errors or irregularities in amounts that would be material in relation to the financial statements being audited may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions." AU Sec. 325.15.
 
 
 14
 Under GAAS, however, even if the problems amounted to material weaknesses, Deloitte was required only to report them to management and the audit committee. See AU Secs. 325.09-.10, 325.15. Thus, even accepting these statements of the expert witness as true, Deloitte did all that it was required to do under applicable accounting standards, and there was no triable issue of fact in this regard. See In re Apple Computer Sec. Litig., 886 F.2d 1109, 1116 (9th Cir.1989) (although generally summary judgment is inappropriate where expert testimony supports non-moving party, the court is not required to defer to expert opinion if the evidence is clear), cert. denied, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990).
 
 
 15
 Plaintiffs' expert also stated in his affidavit that the audit report should have contained a scope limitation because of the internal control weaknesses discovered by Deloitte in 1988. The expert did not, however, explain why such a limitation was necessary in light of Deloitte's adjustment of the scope of the audit. As noted, Deloitte followed the generally accepted practice upon discovery of an internal control weakness. The expert also stated that the report should have contained a going concern qualification, but the district court correctly pointed out that under the AICPA Standards, internal controls problems do not trigger a going concern qualification. AU Sec. 340.04. The Monroes do not specifically contend on appeal that either a scope limitation or a going concern qualification should have been included in the audit report.
 
 
 16
 In short, while the Monroes argue that courts should not be chained to standards promulgated by the accounting profession in interpreting Sec. 11, they have provided no reason for holding, in this case, that Hughes' internal control deficiencies would have been material to the deliberations of a potential investor and should have been included in the 1988 audit report. It is true that by the time appellants purchased the debentures in 1989, the company was in deep trouble. But the district court correctly pointed out that the failure of the company to heed the accountant's admonition to cure the control deficiencies, and the delay between the time of the audit and the actual securities offering, as well as the failure of the underwriters ever to inquire about the existence of the management letter, were not the responsibilities of the accountants in 1988 and violated no duties owed by accountants to investors under Sec. 11 of the 1933 Act.
 
 The Sec. 10(b) Claims
 
 17
 The Monroes contend that the district court erred in granting summary judgment for Deloitte on their claim under Rule 10b-5, which requires plaintiffs to demonstrate (1) a material misstatement or omission of fact; (2) intent to defraud (scienter); and (3) reliance. See Basic Inc. v. Levinson, 485 U.S. 224, 231, 243, 108 S.Ct. 978, 983, 989, 99 L.Ed.2d 194 (1988); Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568 (9th Cir.1990) (en banc), cert. denied, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). To establish liability for failure to disclose a material fact, there must be a duty to disclose. Basic Inc., 485 U.S. at 239 n. 17, 108 S.Ct. at 987 n. 17; Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646, 653 (9th Cir.1988) (per curiam), cert. denied, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989).
 
 
 18
 Deloitte had no independent duty to disclose its findings regarding internal controls directly to the investors; it had no direct relationship with the investors, derived no benefit from any relationship with the investors and played no role in initiating the securities transactions. See Basic Inc., 485 U.S. at 239 n. 17, 108 S.Ct. at 987 n. 17; Roberts, 857 F.2d at 653-54. Moreover, because there was no material misrepresentation in the registration documents for purposes of Sec. 11 liability, we see no reason for concluding that there was a material misrepresentation for purposes of 10b-5 liability.
 
 
 19
 There is no conceivable basis for secondary liability as an aider and abettor; we have held that to establish such liability the alleged aider and abettor must have actual knowledge of another's misrepresentations or omissions and must substantially assist the other's violation. See Roberts, 857 F.2d at 652. The Supreme Court has now held that there is no aider and abettor liability in the context of this case. Central Bank v. First Interstate Bank, --- U.S. ----, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).
 
 State Law Claims
 
 20
 The Monroes also contend on appeal that the district court erred in granting Deloitte summary judgment on their claim under Or.Rev.Stat. Sec. 59.115(3), which imposes liability on any person who participates or materially aids in a securities sale that violates Oregon securities law. The Monroes have acknowledged that their pendent state-law securities claims cannot survive if the district court's summary judgment on the Sec. 10(b) and Sec. 11 claims was proper. Accordingly, because we affirm the district court's disposition of the federal claims, we reject the state-law claims.
 
 Conclusion
 
 21
 For the foregoing reasons, the judgment of the district court in favor of Deloitte is AFFIRMED.