BOGGS, Circuit Judge,
dissenting.
The court’s assessment of attorney Barn-hart’s role is wrong as a factual matter (insofar as we must take the plaintiffs’ allegations as fact), and its conclusions as to what Rubin should have been able to expect of the other party’s attorney are wrong as a matter of *1258 law. The court sets far too high a standard for plaintiffs in securities-fraud actions, and consequently, far too low a standard of legal responsibility for issuers’ lawyers. I therefore dissent.
The special problems of this case arise because Barnhart was attorney for the securities issuer. Let us ignore that apparently privileged status for a moment, and analyze Barnhart’s actions as we would for any other participant in the sale of securities. Although under Rule 10b — 5(2), “only those individuals who had an affirmative obligation to reveal what was allegedly omitted can be held liable as primary participants in the alleged deception [, a] duty to disclose naturally devolve[s] on those who h[ave] direct contacts with ‘the other side.’ ” SEC v. Coffey, 493 F.2d 1304, 1315 (6th Cir.1974). “Direct contacts may take many forms. An accountant or lawyer, for instance, who prepares a dishonest statement is a primary participant in a violation [i.e. subject to primary liability] even though someone else may conduct the personal negotiations with a security purchaser.” Id. at 1315 n. 24. “A person undertaking to furnish information which is misleading because of a failure to disclose a material fact is a primary participant.” SEC v. Washington County Util. Dist., 676 F.2d 218, 223 (6th Cir.1982). The conversations between Barnhart and the plaintiffs were clearly instances of the “direct contacts” that we have repeatedly held create a duty to disclose, and.under this test, Barn-hart’s omissions should expose him to liability under Rule 10b-5.
Another approach to determining the existence of a duty to disclose is found in Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646 (9th Cir.1988), a case cited by the court, in which a law firm was found not liable for securities fraud because it had no duty to disclose certain information. That court stated:
The court determines whether a duty to disclose exists by examining five non-exclusive factors...
1. the relationship of the defendant to the plaintiff;
2. the defendant’s access to information as compared to the plaintiffs access;
3. the benefit that the defendant derives from the relationship with the plaintiff;
4. the defendant’s awareness of plaintiffs reliance; and
5. the defendant’s activity in initiating the securities transaction in question.
Id. at 653.
Here, the second, third, and fourth factors clearly support a duty to disclose. With respect to the third, it was obviously in Barn-hart’s interest for his long-time client to obtain financing that would keep it in business, and with respect to the fourth, the plaintiffs’ reliance should have been apparent to Barn-hart. As for the second factor, the court seems to accept the defendants’ assertion that Rubin and Weiss could have discovered the true condition of the Star Bank relationship “for the price of a phone call.” I find nothing in the record to support the court’s conclusion that Plaintiffs “could have ascertained for themselves the status of Star Bank’s loans to MDI.” (Op. at 1256). Although the court states, at note 6, that the default provisions are contained in documents that the Todds had, but did not produce, the default condition of the loans was not in those documents. That information was in the hands of Star Bank. I would hope that as a matter of business practice, if not of law, a bank would not divulge details of a customer’s credit standing without express authorization from that customer.[1] In this *1259 procedural posture, the contrary should not be assumed. (Without meaning to cast aspersions on Star Bank, I note that it was also in the bank’s interests for Rubin to send money to MDI; so, as far as the court knows, there might have been a double barrier between Rubin and the truth.) Of course, if in response to an inquiry from Rubin and Weiss, Star Bank had been instructed to discuss the company’s affairs, Rubin would probably have kept his money, and this case never arisen.
This analysis forces the conclusion that a non-attorney who acted as Barnhart did would have possessed a duty to disclose. In light of what Barnhart did say about the Star Bank relationship, the things he did not say were highly material, and misleading. And it is well established in securities law that in a case involving a failure to disclose, “positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.” Affiliated, Ute Citizens v. United States, 406 U.S. 128, 153-64, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); Ockerman v. May Zima & Co., 27 F.3d 1151, 1159 (6th Cir.1994) (“In face-to-face transactions, reliance on a defendant’s failure to disclose material information may also be presumed where the defendant had a duty to disclose.”).
If anyone else having a duty to disclose knowingly failed to state a material fact, if the omission rendered other statements misleading, and if an investor relied on the misleading statements to his loss, that would be fraud. Why should it not be for Lawyer Barnhart? As the court recognizes, Rubin alleges that “the Todds encouraged [the plaintiffs] to contact SZ & D to confirm the representations being proffered by the Todds as to the financial condition of MDI and its need for additional capital.” In the resulting conversations, Barnhart, counsel to MDI since its inception and speaking specifically at the behest of his client, undertook to furnish information and opinions regarding the Star Bank relationship — a subject well within the scope of a discussion about financial condition. Nonetheless, the court concludes that “[t]he status of loans to MDI from Star Bank was not relevant to those issues upon which Barnhart was hired to issue an opinion.” (Op. at 1256-57). The court acknowledges that where “the attorney omits material information directly relevant to the purpose for which the attorney was hired, courts are inclined to hold counsel liable.” Op. at 1255. Yet it then proceeds to absolve an attorney who was allegedly acting as a pitchman for his client, the issuer.
As shown, the court thus bases its decision on an erroneous analysis of the facts as we must assume them to be. Moreover, § 10(b) and Rule 10b-5 cover “any person,” and I do not see where the law indicates that a person may escape liability for fraudulent omissions merely by virtue of being an attorney who was not specifically hired, in so many words, to have the interactions with the purchaser *1260 wherein the fraud occurred.[2] Such a holding creates an enormous opportunity for enterprising lawyers to tout their client’s securities as a gratuitous service. Lawyers of a certain stripe would understand that helping a transaction to a successful conclusion would not be harmful to their compensation for the matter at hand, or to their prospects of engagement on future matters. If sued, they would be free to argue that their exchanges with the plaintiff were not contemplated by the direct terms of engagement by their principal, and were therefore non-actionable. The court’s holding allows an attorney’s duty of zealous advocacy[3] to pull in the same harness with his personal advantage.
As for affirmative misstatements, Barnhart allegedly told the investors that there was “no problem with the Star Bank and MDI,” and that the bank would “look with favor upon an infusion of $153,000 in capital.” Of course, there were problems: MDI was already in default, and the investment would constitute a further incident of default. The court acknowledges that, under Mayer v. Mylod, Barnhart’s statements “may be sufficient” to amount to material misrepresentations (Op. at 1256), but then absolves Barn-hart of liability for securities fraud because, it says, the plaintiffs were not justified in relying on the misrepresentations (Op. at 1257).
Unless the principle is to be that no reasonable investor would rely on anything said by his counter party’s lawyer, the question is whether Rubin was required, on peril of losing his right to sue for fraud, to contact Star Bank directly, despite having been told everything was fine with the bank, that there was no need to contact the bank, and having no indication that the bank would be willing to discuss confidential business with a caller out of the blue. Obviously, Rubin and Weiss fell far short of the painstaking due diligence that, in contemporary corporate practice, is part of every large financing. Obviously, they could have insisted that SZ & D opine about matters beyond MDI’s corporate status, including its relationship with Star Bank. Their imprudence was mitigated only by their not altogether softheaded gamble that they could count on the issuer’s lawyer not to make statements of such breathtaking mendacity. This was, after all, an investment of only $153,000. The cost of full-bore due diligence will often be disproportionate to the size of a financing. Efficiency requires a modicum of trust. If every small investor had to nail down every source of information underpinning the representations made by the other side, lawyers might be extremely happy, but the business involved would ultimately be transacted at greater cost. Denying recourse to anyone who relies on factual misrepresentations by the other party’s lawyer has a price attached, which must be absorbed by the market for capital.
I particularly disagree with the court’s explanation for its holding that Rubin could not reasonably rely on the information Barn-hart related. At one point, the court sets forth the eight factors that are used in this circuit to determine whether a plaintiff was reckless in relying on affirmative misrepresentations. Op. at 1254, quoting Molecular Technology Corp. v. Valentine, 925 F.2d 910, 918 (6th Cir.1991). I might be convinced that an application of these factors would spell recklessness on Rubin’s part; Rubin was a sophisticated investor, there was no longstanding business or personal relationship between him and MDI or Barnhart, and Barnhart’s misrepresentations were of a fairly general nature. In the end, however, the court’s holding that the plaintiffs could *1261 not justifiably rely on Barnhart’s misrepresentations is not based on such an analysis. Op. at 1256-57. Instead, it rests on a misunderstanding of the principle that a party who is represented by counsel cannot rely on the opinion of the other party’s attorney.
That principle, as a reading of the cases cited by the district court reveals, is limited to reliance on the opinions or research of the other party’s attorney on points of law. See Royal American Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1016 (2d Cir.1989) (alleged misrepresentation “concerned a statute that both parties were aware of, and even more important, the interpretation of that statute”); Morin v. Trupin, 711 F.Supp. 97, 104 (S.D.N.Y.1989) (“The misrepresentations allegedly made ... consisted of the legal position of the [defendant law firm’s] clients. A party represented by counsel cannot establish justifiable reliance when the claim is premised upon the legal opinion of an adversary’s counsel.”); Verschell v. Pike, 85 A.D.2d 690, 445 N.Y.S.2d 489, 491 (1981) (“plaintiffs attorney was not justified in relying upon his adversary’s statement that the lease was legal under the zoning ordinance”). The theory is that one’s own lawyer ought to be able to detect and cure misleading statements of law from the other side. Extending the principle to factual representations would put an investor in far greater peril in speaking to an issuer’s counsel than in speaking with the president of the company. In short, it allows an attorney to mislead investors with impunity. This is not a privilege afforded by a law degree.
I respectfully dissent.

. I find no definite Ohio authority as to whether a bank has a duty to refrain from disclosing information about loan customers to unauthorized third parties. It is clear that "[t]he relationship of debtor and creditor without more is not a fiduciary relationship. A fiduciary relationship may be created out of an informal relationship, but this is done only when both parties understand that a special trust or confidence has been reposed.” Umbaugh Pole Bldg. Co. v. Scott, 58 Ohio St.2d 282, 390 N.E.2d 320, 323 (1979). The record does not reveal, nor may we in this posture assume, that the relationship between MDI and Star Bank was such that Star Bank was at liberty to make unauthorized disclosures without breaching a duty to MDI. One Ohio court has suggested (in an unpublished opinion) that unauthorized disclosure of information about a *1259 corporate customer could expose the bank to an action for defamation. Third Nat'l Bank and Trust Co. v. Sinder, 1987 WL 12965, *9 (Ohio.Ct.App. June 18, 1987). That proposition is a much-debated one, especially, though not exclusively, when it comes to disclosures to government investigators. See, e.g., Young v. United States Dep’t of Justice, 882 F.2d 633, 642 (2d Cir.1989); Indiana Nat’l Bank v. Chapman, 482 N.E.2d 474, 482 (Ind.App.1985); Edward L. Raymond, Jr., Annotation, Bank’s Liability, Under State Law, For Disclosing Financial Information Concerning Depositor or Customer, 81 A.L.R.4th 377, 391-94 (1990).
Whatever Star Bank's legal authority to disclose may have been, this court should not assume that, as a matter of business practice, Star Bank would disclose a customer’s default over the phone to an unknown inquirer. I agree with the Second Circuit, that "most depositors believe banks will keep their banking activities confidential. At the very least, banks have fostered that impression. The American Bankers Association counsels its members that customer account information should generally be kept confidential ... and acknowledges that most customers assume that banking transactions are confidential. ...” Young, 882 F.2d at 642-43.

. If an issuer or its executives were to claim, in a 10b-5 action in which they were the defendants, that the attorney was operating beyond the scope of his authority, that defense might possibly have some merit. The surviving allegations of this suit, however, are against Barnhart and his firm, not the Todds or MDI.

. See Model Rules of Professional Conduct Rule 1.3 cmt. [1], Nor would the attorney be required by Rule 4.1(b) to "disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client,” because, if the attorney were acting strictly on his own, there would be no fraudulent act by the client.