**In re: WILLIAMS SECURITIES LITIGATION**

**This Document Relates to: WMB Subclass**

**No. 02–CV–72–H(M).**

United States District Court, N.D. Oklahoma.

Dec. 12, 2003.

James Rouse Hicks, Ronald Joseph Saffa, Morrel West Saffa Craige & Hicks Inc, Tulsa, OK, Kevin J Yourman, Behram V Parekh, Weiss & Yourman, Los Angeles, CA, Steven G Schulman, Samuel H Rudman, U Seth Ottensoser, Caroline L Marshall, Jennifer K Hirsh, Joshua H Vinik, Dael Cohen, Milberg Weiss Bershad & Schulman LLP, New York, NY, Nadeem Faruqi, Faruqi & Faruqi, New York, NY, David Scott, Neil Rothstein, Michael Swick, Scott & Scott, Colchester, CT, Sherrie R Savett, Michael T Fantini, Berger & Montague PC, Philadelphia, PA, William B Federman, Federman & Sherwood, Oklahoma City, Seth D Rigrodsky, Milberg Weiss Bershad & Schulman LLP, New York, NY, Mark C Gardy, Abbey Gardy LLP, New York, NY, Fred Taylor Isquith, Gregory Mark Nespole, Jeffrey G Smith, David L Wales, Wolf Haldenstein Adler Freeman & Herz, New York, NY,

Marc S Henzel, Marc S Henzel Law Office, Bala Cynwyd, PA, Brian M Felgoise, Jenkingtown, PA, Ira M Press, Kirby McInerney & Squire, New York, NY, R Robyn Assaf, Jones Kurth Andrew & Oritz, Oklahoma City, OK, William W Thomas, Michael I Behn, Futterman & Howard Chtd, Chicago, IL, Mel E Lifshitz, Gregory M Egleston, Bernstein Liebhard & Lifshitz LLP, New York, NY, Michael D Braun, Stull Stull & Brody, Los Angeles, CA, Marc A Topaz, Schiffrin & Barroway LLP, Bala Cynwyd, PA, Paul J Geller, Cauley Geller Bowman & Coates LLP, Boca Raton, FL, Jeffrey H Squire, Mark A Strauss, Kirby McInerney & Squire, New York, NY, R. Robyn Assaf, Jones Kurth Andrew & Ortiz, Oklahoma City, OK, Charles J Piven, Baltimore, MD, Robert I Harwood, Samuel K Rosen, Wechsler Harwood Halebian & Feffer LLP, New York, NY, Andrew M Schatz, Jeffrey S Nobel, Patrick A Klingman, Wayne T Boulton, Schatz & Nobel PC, Hartford, CT, Robert M Roseman, John Macoretta, Spector Roseman & Kodroff PC, Philadelphia, PA, John G Emerson, Jr, Emerson Poynter LLP, Little Rock, AR, Jeffrey C Zwerling, Richard A Speirs, Zwerling Schachter & Zwerling LLP, New York, NY, Brian Barry, Jill Levine, Los Angeles, CA, Susan R Gross, Bernard M Gross PC Law Offices, Philadelphia, PA, Richard A Lockridge, Karen M Hanson, Lockridge Grindal Nauen PLLP, Minneapolis, MN, John R Malkinson, Malkinson & Halpern PC, Chicago, IL, Michael D Donovan, Donovan Searles LLC, Philadelphia, PA, Paul J Scarlato, Weinstein Kitchenoff Scarlato & Goldman Ltd, Philadelphia, PA, Evan Smith, Bala Cynwyd, PA, Burton H Finkelstein, Andrew J Morganti, Finkelstein Thompson & Loughran, Washington, DC, Joshua M Lifshitz, Peter D Bull, Bull & Lifshitz LLP, New York, NY, Charles Robert Burton, IV, R Thomas Seymour, Seymour Law Firm, Tulsa, OK, Christopher Lometti, Ashley Kim, Schoengold & Sporn PC, New York, NY, Jonathan M Plasse, Emily C Komlossy, Lynda J Grant, Goodkind Labaton Rudoff & Sucharow LLP, New York, NY, Jules Brody, Aaron Brody, Tzivia Brody, Stull Stull & Brody, New York, NY, David B Kahn, Mark E King, David B Kahn & Associates Ltd, Northfield, IL, Jerold B Hoffman, Hoffman & Edelson LLC, Doylestown, PA, Thomas G Shapiro, Shapiro Haber & Urmy LLP, Boston, MA, Gerald Joseph Lovoi, Tulsa, OK, Marvin L Frank, Eric J Belfi, Murray Frank & Sailer LLP, New York, NY, Kenneth A Elan, New York, NY, Michael G Lange, Steven Morris, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, MA, for Victor Cali, Individually And On Behalf of All Others Similarly Situated 02–C–72–H(M), Thomas Ingoglia, Individually And On Behalf of All Others Similarly Situated 02–C–72–H(M), All Plaintiffs, Blaine J Watkins, bond purchaser class member 02–C–218–H(M), Market Street Securities, Inc., class member 02–C–132–H(M), Local 710 Pension Fund, debt securities subclass member, George Chidlae Weisz, 02–C–77–H, Harvey Matcovsky, 02–C–78–H, Gloria Rein, 02–C–78–H, Jay Hansbro, 02–C–80–H, Robert A Rovner, 02–C–81–H, Thomas W Clavin, 02–C–83–H, Malka Berger, 02–C–93–H, Todd Simon, 02–C–93–H, BC Investment Club, 02–C–95–H, Jeffrey Cohen, 02–C–107–H, Dale N Shook, 02–C–113–H, Harriet Goldstein, 02–C–120–H, Angelo Armezzani, 02–C–124–H, Joyce Armezzani, 02–C–124–H, John Cottrell, 02–C–130–H, John Querci, TTEE Medical Walk in Ctr PS Plan DTD 01/01/92, 02–C–135–H, Michael Ackerman, 02–C–139–H, Michael Sheniak, 02–C–161–H, Paul W Miller, 02–C–162–H, Saffi Omar, 02–C–184–H, Ronald Wilkinson, 02–C–189–H, Sarah Harman, 02–C–204–H, Teamsters Local 854 Pension Fund, 02–C–205–H, Health & Welfare Benefits Plan Fund, Local 854

I.B.T., 02–C–205–H, Elaine Katz, 02–C–206–H, Diana Vaughan, 02–C–231–H, Lawrence M Cohen, 02–C–235–H, Lawrence M. Cohen Trust, 02–C–235–H, Lawrence M. Cohen Ira, 02–C–235–H, Leon Kaufman, 02–C–235–H, Leon Kaufman Ira, 02–C–235–H, Malvin Kaufman, 02–C–235–H, Malvin Kaufman Ira, 02–C–235–H, Scott Kaufman Ira, 02–C–235–H, Local 710 Health and Welfare Fund, Amy K Hoffman, Jeffrey S Jordan, Gary Kosseff, plaintiffs.

Graydon Dean Luthey, Jr, Sarah Jane McKinney, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, OK, Alex Anton Goldberg, Williams Companies Inc, Tulsa, OK, Timothy K Roake, Sally J Berens, Courtney Greene Power, Gibson Dunn & Crutcher, Los Angeles, CA, Steven J Rothschild, Scott L Adkins, Randolph K Herndon, Skadden Arps Slate Meagher & Flom, Wilmington, DE, Wayne W Smith, Meryl L Young, Jeffrey H Reeves, Darren L McCarty, Ethan D Dettmer, Gibson Dunn & Crutcher LLP, Irvine, CA, Michael James Gibbens, James L Kincaid, Victor Eric Morgan, Gerald Lee Jackson, Crowe & Dunlevy, Tulsa, OK, Susan E Huntsman, Crowe & Dunlevy, Tulsa, OK, Jennifer Ann Blankenship, Crowe & Dunlevy, Oklahoma, City, OK, Timothy James Bomhoff, Patrick M Ryan, Phillip G Whaley, Ryan & Whaley, Oklahoma City, OK, Joe M Hampton, Oklahoma City, OK, Miles N Ruthberg, Jamie L Wine, Paul V Konovalov, Latham & Watkins, Los Angeles, CA, Burck Bailey, Warren F Bickford, IV, Brooks A Richardson, Fellers Snider Blankenship, Bailey & Tippens, Oklahoma City, OK, Dennis J Block, Jonathan M Hoff, Alla Lerner, Isaac Greaney, Cadwalader Wickersham & Taft, New York, NY, Jennifer Ellen Mustain, Hall Estill Hardwick Gable, Golden & Nelson, Tulsa, OK, John Barnes Heatly, Fellers Snider Blankenship, Bailey & Tippens, Oklahoma City, OK, Vance L Beagles, Ralph I Miller, Weil Gotshal & Manges LLP, Dallas, TX, for

Williams Companies, Inc., the, Sued as: Williams Companies, Inc., separately and senior management, Williams Communications Group, Inc., Keith E Bailey, Howard E Janzen, Scott E Schubert, Ken Kinnear, Matthew W Bross, Bob F McCoy, Howard S Kalika, John C Bumgarner, Frank M Semple, Ernst & Young, LLP, Goldman Sachs & Co., UBS Warburg LLC, Williams Defendants, Underwriter Defendants, All Defendants, Steven J Malcolm, 02–C–206–H, Gary R Belitz, Hugh M Chapman, Glenn A Cox, Thomas H Cruikshank, William E Green, W R Howell, James C Lewis, Charles M Lillis, George A Lorch, Jack D McCarthy, Gordon R Parker, Janice D Stoney, Joseph H Williams, Lehman Brothers Inc., sued as: Lehman Brothers, Merrill Lynch & Co., Salomon Smith Barney, Inc., sued as: Salomon Smith Barney, Banc of America Securities LLC, Barclays Capital, BNP Paribas, Commerzbank Capital Markets Corp, Credit Lyonnais Securities (USA) Inc., Fleet Securities, Inc., KBC Financial Products, RBC Dominion Securities Corporation, Scotia Capital (USA) Inc., Suntrust Robinson Humphrey, TD Securities (USA) Inc., Williams Capital Group, L.P., Ira D Hall, Frank T MacInnis, Steven J Malcolm, Credit Suisse First Boston Corporation, Mizuho International PLC, ABN Amro Rothschild LLC, BMO Nesbitt Burns Corp, Barclays Bank PLC, CIBC World Markets Corp, RBC Dain Rauscher Inc., Royal Bank of Scotland PLC, the, Merrill Lynch, Pierce, Fenner & Smith, Inc., defendants.

James Rouse Hicks, Ronald Joseph Saffa, Morrel West Saffa Craige & Hicks Inc, Tulsa, OK, Kevin J Yourman, Behram V Parekh, Weiss & Yourman, Los Angeles, CA, Steven G Schulman, Samuel H Rudman, Andrei V Rado, Caroline L Marshall, Jennifer K Hirsh, Joshua H Vinik, Milberg Weiss Bershad & Schulman LLP, New York, NY, Nadeem Faruqi, Faruqi & Faruqi, New York, NY, David Scott, Neil

Rothstein, Michael Swick, James E Miller, Scott & Scott, Colchester, CT, Elizabeth P Lin, Weiss & Yourman, Los Angeles, CA, Seth D Rigrodsky, Milberg Weiss Bershad & Schulman LLP, New York, NY, Charles Robert Burton, IV, R Thomas Seymour, Scott A Graham, Seymour Law Firm, Tulsa, OK, Christopher Lometti, Ashley Kim, Schoengold & Sporn PC, New York, NY, William B Federman, Federman & Sherwood, Oklahoma City, OK, Marc A Topaz, Andrew L Barroway, Stuart L Berman, Schiffrin & Barroway LLP, Bala Cynwyd, PA, Sherrie R Savett, Michael T Fantini, Berger & Montague PC, Philadelphia, PA, Jeffrey C Zwerling, Richard A Speirs, Zwerling Schachter & Zwerling LLP, New York, NY, Richard A Lockridge, Karen M Hanson, Gregory J Myers, Lockridge Grindal Nauen PLLP, Minneapolis, MN, John R Malkinson, Malkinson & Halpern PC, Chicago, IL, Samuel P Sporn, Jay P Saltzman, Schoengold & Sporn PC, New York, NY, for Norman H Kirkendoll, class member, Alex Meruelo, class member, Melis Paronyan, class member, HGK Asset Management, Inc., class member, Jay-Bee Imports, Inc., class member, Douglas E Miller, class member, Carol Moore, class member, Bruce Smith, bond purchaser class member, Kathleen Smith, bond purchaser class member, Bruce Russell, bond purchaser class member, Westmonte Plaza, Inc., class member, Darryl Abramowitz, class member, Subclass of Purchasers of WMB Securities, movants.

## ORDER

HOLMES, Chief Judge.

This matter comes before the Court pursuant to the following motions filed on January 13, 2003:(1) The Williams Defendants' Opening Brief in Support of Their Motion to Dismiss the Consolidated Amended Class Action Complaint on Behalf of Purchasers of WMB Securities (Docket No. 223); (2) Defendant Ernst & Young LLP's Motion to Dismiss Consolidated Amended Complaint (Docket No. 231); (3) The Underwriter Defendants' Motion to Dismiss and Brief in Support (Docket No. 234); and (4) John C. Bumgarner, Jr.'s Motion to Dismiss and Supporting Brief (Docket No. 233). The Court heard argument on these motions on April 8, 2003.

### I

This case involves a securities class action lawsuit brought on behalf of all persons or entities who purchased Williams Companies, Inc. ("WMB") securities between July 24, 2000 and July 22, 2002 (the "Class Period"). (Consolidated Am. Compl. (hereinafter "Compl.") at ¶ 1.) [1]

### A. *Plaintiffs*

The Consolidated Amended Complaint (hereinafter "Complaint"), which was filed by Lead Plaintiff HGK Asset Management ("HGK") on October 7, 2002,[2] specifically identifies five groups of purchasers. The first group includes all purchasers of WMB common stock during the Class Period (the "Common Stock Purchasers"). The second group includes purchasers of approximately 38,000,000 shares of WMB common stock on or about January 16, 2001 (the "January 2001 Stock Purchas-

---

**1.** The Class Period dates from July 24, 2000, when WMB first announced that its management had been authorized to spin off its communication businesses, until July 22, 2002, when WMB issued a press release announcing losses for the second quarter 2002.

**2.** On July 8, 2002, the Court appointed HGK Asset Management to serve as Lead Plaintiff on behalf of the WMB Subclass.

ers"). The third group includes purchasers of approximately 30,000,000 shares of WMB common stock issued as a result of the August 2, 2002 merger of Barrett Resources Corporation into WMB (the "Barrett Resources Purchasers"). The fourth group includes purchasers of $750 million of WMB 7.125% Notes due September 1, 2011 and/or of $750 million WMB 7.875% Notes due September 2021 that were issued on or about August 16, 2001 (the "Notes Purchasers"). The final group includes purchasers of $1.1 billion of FE-LINE PACS issued on or about January 7, 2002 (the "FELINE PACS Purchasers"). (Compl. at ¶ 1.) Collectively, these five groups of purchasers are referred to herein as the WMB Subclass.

### B. *Defendants*

The Complaint asserts causes of action against numerous defendants. Various of the defendants have been grouped together based on their roles and the claims asserted against them. The first such group is collectively known as the "Williams Defendants" and includes WMB and the following twelve individuals who were either members of senior management or directors of WMB during the Class Period: Keith E. Bailey, Steven Malcolm, Jack D. McCarthy, Gary R. Belitz, William E. Hobbs, Glenn A. Cox, W.R. Howell, James C. Lewis, Peter C. Meining, Charles M. Lillis, Gordon R. Parker, and Joseph H. Williams.[3] The roles and re-

sponsibilities of each of these twelve individuals during the Class Period, as alleged in the Complaint, is described below.

Keith Bailey was President, Chairman of the Board of Directors and Chief Executive Officer of WMB until on or about January 22, 2002, when he resigned as Chief Executive Officer. On May 31, 2002, Mr. Bailey retired as Chairman of the WMB Board. Mr. Bailey signed WMB's Form 10–Ks for the years ending December 31, 1999, 2000, and 2001, and the registration statements for the January 2001 Stock Offering, the Barrett Resources Offering, the Notes Offering, and the FE-LINE PACS Offering.[4] Mr. Bailey owned substantial amounts of WMB common stock and participated in WMB's stock option loan program.[5]

Steven Malcolm was WMB's Chief Operating Officer, and became President of WMB in the fall of 2002. Mr. Malcolm replaced Mr. Bailey as CEO and Chairman of the Board in May 2002. Mr. Malcolm owned substantial amounts of WMB common stock.

Jack McCarthy was WMB's Principal Financial Officer and Senior Vice President of Finance. Mr. McCarthy signed WMB's Form 10–Ks for the years ending December 31, 2000 and 2001, and the registration statements for the January 2001 Stock Offering, the Barrett Resources Offering, the Notes Offering, and the FE-LINE PACS Offering. Mr. McCarthy

---

**3.** These twelve individuals are referred to collectively herein as the "Individual Defendants."

**4.** These offerings are defined in the Complaint as follows: "January 2001 Stock Offering"—38,000,000 shares of WMB common stock offered for sale in January 2001; "Barrett Resources Offering"—30,000,000 shares of WMB common stock issued as a result of the August 2, 2002 merger of Barrett Resources Corporation into WMB; "Notes Offering"—

$750 million of WMB 7.125% Notes due September 1, 2001 and $750 million WMB 7.875% Notes due September 2021 issued on or about August 16, 2001; and "FELINE PACS Offering"—$1.1 billion worth of FE-LINE PACS issued on or about January 7, 2002.

**5.** The loan program was designed to allow individuals to exercise stock options using stock certificates as collateral.

owned substantial amounts of WMB common stock and participated in WMB's stock option loan program.

Gary Belitz was WMB's Controller and Principal Accounting Officer. Mr. Belitz signed WMB's Form 10–Qs for the periods ending June 30, 2000, September 30, 2000, March 31, 2001, June 30, 2001, September 30, 2001, and March 31, 2002, WMB's Form 10–Ks for the years ended December 31, 2000 and 2001, and the registration statements for the January 2001 Stock Offering, the Barrett Resources Offering, the Notes Offering, and the FELINE PACS Offering. Mr. Belitz participated in WMB's stock purchase loan program.

William Hobbs was Chairman of the Board, President and Chief Executive Officer of WMB's Energy Marketing & Trading unit ("EM & T").

Defendants Glenn Cox, W.R. Howell, James Lewis, Charles Lillis, Gordon Parker, and Joseph Williams were members of WMB's Board of Directors and also signed the registration statements for the January 2001 Stock Offering, the Barrett Resources Offering, the Notes Offering, and the FELINE PACS Offering.

Peter Meining was a member of WMB's Board of Directors and signed the January 2001 Stock Offering Registration Statement and Amendment No. 1 to the Barrett Resources Offering Registration Statement.

The second group of defendants is collectively known as the "Underwriter Defendants" and includes Merrill Lynch & Co., Inc.; Salomon Smith Barney, Inc.; Lehman Brothers Inc.; Credit Suisse First Boston Corp.; Banc of America Securities LLC; CIBC World Markets Corp.; Goldman Sachs & Co.; and UBS Warburg LLC. These Underwriter Defendants played various roles with respect to the sale of WMB securities acting as lenders, underwriters, and financial advisors to WMB during the Class Period. Certain of the Underwriter Defendants participated in roadshow presentations to institutional investors in connection with various WMB offerings.

Another defendant in the action is the accounting firm of Ernst & Young LLP ("Ernst & Young"). Ernst & Young acted as WMB's outside auditor since at least 1988. It provided WMB with both auditing and non-auditing services. Ernst & Young issued unqualified audit reports on WMB's consolidated financial statements for the years ending December 31, 2000 and 2001. In addition, Ernst & Young consented to the use of its unqualified audit report on WMB's 2000 consolidated financial statements in the registration statements and prospectuses filed in connection with the Barrett Resources Offering, the Notes Offering, and the FELINE PACS Offering.

The remaining defendant in this action is John C. Bumgarner, Jr. Mr. Bumgarner, until September 24, 2001, was WMB's Senior Vice President of Corporate Development and Planning and President of Williams International Company. Until April 23, 2001, the date of the spin-off of Williams Communications Group, Inc. ("WCG"), Mr. Bumgarner was WCG's Vice President of Strategic Investments, and a director of WCG. Mr. Bumgarner has held various positions with WMB since 1977. On September 24, 2001, Mr. Bumgarner resigned from WMB to become co-chief operating officer of WCG. He owned substantial amounts of both WMB and WCG common stock, and participated in WMB's stock purchase loan program.

### C. *Plaintiffs' Allegations*

The Complaint alleges that Defendants undertook a plan to materially and artificially inflate and maintain the prices of

WMB securities during the Class Period, by artificially inflating the assets, revenues and profits of WMB, which had been relatively flat in 1997, 1998, and 1999. Plaintiffs further allege that this plan was carried out principally in three ways:

(1) WMB failed to properly account for its $2.6 billion in credit exposure to WCG, its former subsidiary which WMB spun off on April 23, 2001, except for 5% of WCG stock;

(2) WMB concealed the manipulation of profits, assets, and revenues of its EM & T unit, in the billions of dollars; and

(3) WMB concealed various other guarantees, obligations, risks, and improprieties, including its role in the late 2000–early 2001 California energy crisis.

(*See* Compl. at ¶ 5.)

Plaintiffs allege these actions violated certain sections of the Securities Act of 1933 (the "Securities Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), and Oklahoma law, including: Section 11 of the Securities Act, 15 U.S.C. § 77k; Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2); Section 15 of the Securities Act, 15 U.S.C. § 77*o*; Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5; Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(1); Section 408(a) of the Oklahoma Securities Act, Okla. Stat. tit. 71, § 408(a); and Section 408(b) of the Oklahoma Securities Act, Okla. Stat. tit. 71, § 408(b).

## II

It is settled law that a court may not dismiss a cause of action for failure to state a claim under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that the claimant can prove no set of facts supporting its claim which would entitle it to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1118 (10th Cir. 1997). The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *see also Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.,* 944 F.2d 752, 753 (10th Cir.1991) ("Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief.").

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the nonmovant. *Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir.1991); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). "In the securities context, Rule 12(b)(6) dismissals are difficult to obtain because the cause of action deals primarily with fact-specific inquiries such as materiality." *Grossman,* 120 F.3d at 1118 (internal quotations and citations omitted). "Nonetheless, courts do not hesitate to dismiss securities claims pursuant to Rule 12(b)(6) where the alleged misstatements or omissions are plainly immaterial, or where the plaintiff has failed to allege with particularity circumstances that could justify an inference of fraud under Rule 9(b)." *Id.* (citations omitted). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support its claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### III. The Williams Defendants' Motion to Dismiss

#### A. *Plaintiffs' Claims Under Section 10(b) of the Exchange Act*

The Williams Defendants move the Court to dismiss Plaintiffs' claims pursuant to Section 10(b) of the Exchange Act on the following grounds: (1) the Complaint fails to allege with the requisite particularity that the Williams Defendants made false and misleading statements; (2) the Complaint fails to plead scienter with particularity; (3) the Complaint fails to satisfy the particularity requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA" or the "Reform Act"), 15 U.S.C. § 78u–4, with respect to the Individual Defendants; and (4) the Complaint is an improper "puzzle-style" pleading. The Court will address each of these claims in turn below.

##### 1. *Whether the Complaint Sufficiently Alleges That The Williams Defendants Made False and Misleading Statements and Omitted Material Facts*

First, the Williams Defendants argue that the Complaint fails to meet the pleading requirements set forth in Fed.R.Civ.P. 9(b) and the PSLRA because it does not allege with the requisite particularity that the Williams Defendants made or were responsible for any false and misleading statements. (The Williams Defs.' Opening Br. in Supp. of Their Mot. to Dismiss the Consolidated Am. Class Action Compl. on Behalf of Purchasers of WMB Securities (hereinafter "Williams Defs.' Br.") at 11.)

■ In order to state a claim under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, a plaintiff must allege: (1) that defendants made a false statement or omission of ma-

terial fact; (2) in connection with a purchase or sale of securities; (3) scienter; (4) reliance; and (5) damages. *See City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1257 (10th Cir.2001). Section 10(b) of the Exchange Act states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange -
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. Rule 10b–5 provides, in pertinent part:

> It shall be unlawful for any person ...
>
> \* \* \* \* \* \*
>
> (B) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ...
>
> \* \* \* \* \* \*
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

Prior to the enactment of the PSLRA, the pleading requirements for stating a claim under Section 10(b) were governed by Fed.R.Civ.P. 9(b), which dictates that "averments of fraud be stated with particularity." *Grossman*, 120 F.3d at 1125.[6]

---

**6.** Although *Grossman* was decided following

the enactment of the PSLRA, because the

*See also* Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Applying Fed.R.Civ.P. 9(b), the Court of Appeals for the Tenth Circuit in *Grossman* held that a "plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *Grossman*, 120 F.3d at 1124 (internal quotations and citations omitted). "Mere conclusory allegations of falsity are insufficient." *Id.*

The PSLRA, which was enacted in 1995, heightened the pleading standards for securities fraud claims in general. *Fleming*, 264 F.3d at 1258. Under the PSLRA, a plaintiff stating a claim under Section 10(b) must "specify each statement alleged to have been misleading, [and] the reason or reasons why the state statement is misleading." 15 U.S.C. § 78u–4(b)(1). If allegations are made upon information and belief, the complaint "shall state with particularity all facts on which that belief is formed." *Id.; Pirraglia v. Novell, Inc.*, 195 F.Supp.2d 1304, 1307–08 (D.Utah 2002). A complaint failing to meet these pleading standards must be dismissed. 15 U.S.C. § 78u–4(b)(3)(A).[7]

■ Applying applicable law to the specific facts alleged in the Complaint, the Court finds the Complaint sufficiently identifies the misleading statements or omitted material facts forming the basis for their Section 10(b) claims and therefore it adequately satisfies the pleading requirements of Rule 9(b) and the PSLRA. Plaintiffs' Complaint sets forth numerous alleged examples of misstatements and omissions; including but not limited to the following:

1. WMB did not timely disclose the existence of: (a) $170 million in losses at its Colorado soda ash facility, which built up for an entire year, from 2000 to late 2001, but WMB waited until the total was that high before taking any charge to earnings; (b) the material terms of financial covenants and obligations in respect of $1 billion in transactions involving outside investors were not disclosed until the 2001 10–K; and (c) a $240 million credit exposure to Enron, offset by a $150 million letter of credit from Enron which WMB allowed to expire on the day Enron filed bankruptcy was not disclosed until after Enron's problems became public and the unnecessary payment to Enron of at least $300 million has never been disclosed. In addition, not a penny of the $2.6 billion WCG Credit Exposure was charged against income until March of

---

initial complaint was filed prior to the effective date of the PSLRA, the PSLRA did not apply. *See Fleming*, 264 F.3d at 1258 n. 15.

7. The PSLRA provides, in pertinent part, as follows:
 In any private action arising under this chapter in which the plaintiff alleges that the defendant—
 (A) made an untrue statement of a material fact; or
 (B) omitted to state a material fact necessary in order to make the statements

made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why they statement is misleading, and, if any allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
 15 U.S.C. § 78u–4(b)(1).

2002, despite a meltdown of the price of WCG stock, a meltdown of the telecommunications industry and a meltdown of WCG's business plan and prospects. (Compl. at ¶ 36.)

2. WMB concealed the material whole truth about its $750 million guarantee of WCG and its $1.4 billion guarantee of WCG debt at a highly critical time in WMB's existence, April—November, 2001. In is first and second quarter 10–Qs for 2001, in its prospectus used in the $1.5 billion Notes Offering, and in its prospectuses used in the Barrett Resources Offering, WMB failed even to mention the $750 million guarantee, and omitted disclosure of a highly material term of the $1.4 billion guarantee, concerning WMB's credit rating serving as a trigger on WMB obligations thereunder. In addition, loan covenants and terms of EM & T trading contracts had triggers if WMB's credit ratings dropped below certain levels and the very ability of EM & T to conduct business was dependent on WMB's credit rating. WMB made no disclosure of these critical facts throughout most of the Class Period. (Compl. at ¶ 37.)

3. WCG's business plan envisioned neither WMB's having to prop WCG up significantly through guarantees nor WCG's having to compete on the basis of pricing .... On January 31, 2002 the closing price [for WCG common stock] was $1.26 per share. In the last three months of 2001, WMB allowed the WCG receivables to mushroom from $220 million to $375 million. On September 24, 2001 WMB dispatched Defendant John C. Bumgarner to right the sinking WCG ship .... WMB, however, concealed the impending doom, in violation of GAAP, and took no charge against earnings, thereby declaring there was

no probability it would suffer any material loss from the $2.6 billion WCG Credit Exposure. (Compl. at ¶ 39.)

4. On January 7, 2002, WMB sold $1.1 billion of FELINE PACSs, concealing the truth about the likely impact of WCG's financial problems on WMB. Just three weeks after collecting $1.1 billion from investors it had materially misled, WMB stunned the market on 1–29–02 by announcing its calculation of 2001 earnings would be delayed while it considered the impact, "if any," from WCG's financial problems. In March, 2002 WMB took a $2.2 billion writedown on its $2.6 billion WCG Credit Exposure, saying it had determined, with the assistance of outside counsel and outside financial consulting, that no one amount of loss above 80% was more likely than another. At no point [up until this point] did WMB retain outside counsel and outside financial consulting so as to tell its investors and the efficient securities market the material whole truth about the enormous financial impact WCG's problems were likely to have on WMB. (Compl. at ¶ 40.)

5. On a broader basis, significant flavor of the nature, range and magnitude of the concealment of the material truth by WMB is found in its 2000 10–K, its 2001 10–Qs, in the Registration Statements for the January 2001 Stock Offering, in the Notes Offering, in the Barrett Resources Offering, and in the FELINF PACS Offering .... [C]oncealed in those documents is this long list of undisclosed items, all of which remained undisclosed until 3–7–02, when WMB filed its 2001 10–K:

A. The ... manipulation of the valuation of EM & T Contracts;

B. The lack of independence of the EM & T "Risk Control Group";

C. The nature of EM & T's interest rate risk;

D. The nature of EM & T's credit default risk;

E. The material significance of EM & T to WMB—in the 2000 10–K EM & T is listed as the eleventh type of business in which WMB engages, whereas it is vaulted to number one in the 2001 10–K;

F. The material significance of WMB's credit ratings for the business of EM & T;

G. Usage of a "risk free" discount rate in valuing the EM & T Contracts, resulting in artificially inflated revenues and assets;

H. The fact there are no markets beyond five years for electric power contracts (tolling agreements) but EM & T tolling agreements are valued for their entire terms;

I. The need for a writedown for the soda ash facility, which was building for a year before disclosure that a $170 million writedown might occur;

J. The material financial covenants and obligations of WMB involving $1 billion in transactions with outside investors. (Compl. at ¶ 41.)

Because Plaintiffs have alleged specific misstatements and omissions made by Defendants during the Class Period in support of their allegations of fraud, the Court hereby denies the Williams Defendants' motion to dismiss Plaintiffs' Section 10(b) claims on this ground.

■ Intertwined with the Williams Defendants' argument that Plaintiffs have failed to identify misleading statements with particularity is the contention that many of the alleged misstatements identified in the Complaint are immaterial and, therefore, not actionable. (Williams Defs.' Br. at 10.) The United States Supreme Court has defined materiality to mean that "there is a substantial likelihood that a reasonable shareholder would consider [the fact] important." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). In determining materiality, the question becomes whether "a reasonable investor would have considered the matter significant." 2 Thomas Lee Hazen, *Treatise on The Law of Securities Regulation*, § 12.9[3] (2002). This finding requires more than a showing that the shareholder *might* have found the information useful. *Id.* Additionally, a materiality determination is made based on the "total mix" of information available. *Id.* Courts have found that "significant overstatements of value or understatements of asset value will be materially misleading." *Id.* In the instant case, the Court finds that the alleged misstatements and omissions set forth by Plaintiffs in the Complaint would be considered important by a reasonable shareholder, and therefore satisfy the Supreme Court's materiality threshold or test for materiality. Accordingly, the Court denies the Williams Defendants' motion to dismiss on this ground.

■ The Williams Defendants further argue that "many of the challenged statements also constitute forward-looking statements protected by the safe harbor provision of the Reform Act (the 'Safe Harbor') and the common law 'bespeaks caution' doctrine." (Williams Defs.' Br. at 10.) Under the PSLRA, Congress created a "safe harbor" which immunizes certain forward-looking statements from liability. 2 Thomas Lee Hazen, *Treatise on The Law of Securities Regulation*, § 12.9[7][C] (2002). These statements must meet the following criteria: (1) "the forward-looking statement is identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause ac-

tual results to differ materially from those in the forward-looking statement; or immaterial;" or (2) "the plaintiff fails to prove that the forward-looking statement ... was made with actual knowledge ... that the statement was false or misleading ...." 15 U.S.C. § 78u–5(c)(1). The Court of Appeals for the Tenth Circuit has defined the "bespeaks caution" doctrine as "[f]orward-looking representations [which provide] the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of the statements at issue to nullify any potentially misleading effect." *Grossman,* 120 F.3d at 1120. The "bespeaks caution" doctrine requires that a statement be analyzed in context, including any cautionary language which accompanies the statement. *Id.* The wording of the safe harbor provision also requires this type of analysis.

In the instant case, the Williams Defendants argue that, under the safe harbor provision, forward-looking statements accompanied by cautionary language are protected. While this claim is true, the Williams Defendants have failed to meet their burden of setting forth specific statements that meet these requirements. Therefore, the Court finds that dismissal of specific claims under this theory is not warranted at this stage of the litigation.

■ With respect to dismissal of claims under the bespeaks caution doctrine, the Williams Defendants argue that certain "projections" in various statements meet the requirements of this doctrine and should insulate them from liability. While it does appear that the face of certain documents contained warnings that might be adequate to warn investors that the valuations were merely projections, the question as to whether the information used to form these projections was correctly used or whether the numbers were

knowingly manipulated remains open. Neither the safe harbor doctrine, nor the bespeaks caution doctrine, was designed to protect the dissemination of intentionally misleading information by simply adding the necessary cautionary language to a misrepresentation. At this stage of the litigation, there remains a factual question as to whether this information was misrepresented and, if so, was it done knowingly. Accordingly, the Court finds that neither the PSLRA's safe harbor nor the bespeaks caution doctrine provides a basis for dismissal at this stage of the litigation.

2. *Whether the Complaint Sufficiently Alleges Facts Establishing a "Strong Inference" of Scienter*

The Williams Defendants further argue that the Complaint fails to adequately plead scienter. As noted above, in order to state a claim under Section 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must allege scienter. *Fleming,* 264 F.3d at 1258. "The term 'scienter' has been defined by the Supreme Court as 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Id.* (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). The Supreme Court has indicated that Section 10(b) was intended to proscribe knowing or intentional conduct. *Ernst & Ernst,* 425 U.S. at 197, 96 S.Ct. 1375 ("The words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to proscribe knowing or intentional misconduct."). The Court of Appeals for the Tenth Circuit has held that a plaintiff may also satisfy the scienter requirement for claims asserted under Section 10(b) by alleging recklessness. *Fleming,* 264 F.3d at 1258 (citations omitted).

The PSLRA, in addition to elevating the pleading standard for securities fraud ac-

1258

tions in general, also mandated a more stringent pleading standard for scienter allegations. *Fleming*, 264 F.3d at 1258. Under the PSLRA, a plaintiff stating a claim under Section 10(b) must "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

■ In determining whether a plaintiff has pled facts giving rise to a strong inference of scienter, the Tenth Circuit has adopted the interpretation of the PSLRA articulated by the Courts of Appeals for the First and Sixth Circuits in *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 197 (1st Cir.1999), and *Helwig v. Vencor, Inc.*, 251 F.3d 540, 550–51 (6th Cir.2001). *Fleming*, 264 F.3d at 1263. Under this interpretation, district courts are to examine a plaintiff's allegations "in their entirety," including any allegations of motive and opportunity, in order to determine whether the plaintiff has sufficiently alleged knowing or reckless conduct on the part of defendants. *Fleming*, 264 F.3d at 1263. The Court of Appeals has held that, while allegations of motive and opportunity may be considered as part of the "mix of information" giving rise to a strong inference of scienter, simply pleading motive and opportunity, without more, does not support such an inference. *Id.*

As discussed above, in order to plead scienter a plaintiff must allege that defendants' conduct was either knowing or reckless. The first of these includes conduct that is more easily identified "since it encompasses deliberate illegal behavior." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir.2000). The second of these, recklessness, however, "is much harder to define adequately." *Fleming*, 264 F.3d at 1260. The Tenth Circuit has defined recklessness to be " 'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.' " *Fleming*, 264 F.3d at 1258 (quoting *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir.1996)). "Simple negligence, however, does not satisfy the scienter requirement." *Id.*

■ The Tenth Circuit requires a plaintiff to allege facts giving rise to a strong inference that "(1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors." *Fleming*, 264 F.3d at 1261. The knowledge requirement can be "satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware of both of its materiality and that its non-disclosure would likely mislead investors". *Id.*

■ The Williams Defendants argue that Plaintiffs rely on a "must be" fraud theory with regard to the pleading of scienter and that this is an inadequate method of pleading scienter. *See* (Williams Defs. Br. at 17 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990))). The Court finds that this method of pleading is inadequate, but that the Williams Defendants' argument in this regard is unavailing because Plaintiffs have otherwise sufficiently pled scienter. Plaintiffs specifically allege facts with regard to the Williams Defendants which meet the *Fleming* requirements, including, but not limited to the following examples: (1) failure to disclose WMB's $750 million guarantee of WCG on the prospectuses used for the Notes Offering and the Barrett Resources Offering; (2) omission of a material term of WMB's $1.4 billion guarantee whereby WMB's credit rating served as a trigger on its obligations under this

guarantee; (3) failure to disclose the size of compensation, bonuses, and loans extended to the Williams Defendants during the Class Period and failure to include these figures in calculating WMB's earnings; and (4) manipulation of valuation of EM & T contracts. All of these allegations qualify as material facts under the *Fleming* analysis. Additionally, the recklessness standard is met because the Williams Defendants, WMB, its senior management, and directors, were in a position to know this information, understand its materiality, and realize that failure to provide complete and accurate information with regard to these subjects would likely mislead investors. Accordingly, the Court finds that Plaintiffs have sufficiently pled scienter and thus the Williams Defendants' motion to dismiss under this theory is hereby denied.

3. *Whether, Under the Group Pleading Doctrine, Plaintiffs Have Sufficiently Pled Claims Against the Individual Defendants*

■ The Williams Defendants move the Court to dismiss Plaintiffs' claims against the Individual Defendants pursuant to Section 10(b) of the Exchange Act on the ground that the Complaint fails to allege with the requisite particularity that the Individual Defendants themselves made false and misleading statements or that they had the requisite scienter.

The group pleading doctrine was established by the Ninth Circuit in 1987 in *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987) ("In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group published information,' it is reasonable to presume that these are the collective actions of the offi-

cers.") The Court of Appeals for the Tenth Circuit adopted the group pleading doctrine in *Schwartz v. Celestial Seasonings*, 124 F.3d 1246, 1254 (10th Cir.1997) ("Identifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group published documents such as annual reports, which presumably involve collective actions of corporate directors or officers."). Although *Celestial Seasonings* was decided in 1997 after the PSLRA was enacted, the opinion does not cite to or discuss the PSLRA. *See In re CFS–Related Sec. Fraud Litig.*, No. 99–CV–825–K(J) (Report & Recommendation (Dec. 21, 2001)) (explaining that the Tenth Circuit likely did not discuss the PSLRA because the district court's November 6, 1995 order of dismissal was appealed in 1995 before the PSLRA became effective). Because the Court of Appeals' decision in *Celestial Seasonings* did not consider the PSLRA or its impact on the group pleading doctrine, the Williams Defendants question the viability of the doctrine as applied in this case.

Another judge in this district has previously ruled, in *In re CFS–Related Sec. Fraud Litig.*, No. 99–CV–825–K(J) (Report & Recommendation (Dec. 21, 2001)), adopted and affirmed in its result, Order (Mar. 28, 2002), that the group pleading doctrine survives the PSLRA. This Court finds the Report and Recommendation of U.S. Magistrate Judge Sam A. Joyner, which was adopted and affirmed by U.S. District Judge Terence Kern in *In re CFS–Related Sec. Fraud Litig.*, both cogent and persuasive. Magistrate Judge Joyner's analysis is set forth, in pertinent part, below:

The language of the PSLRA does not expressly address the group pleading

doctrine. The legislative history [8] of the PSLRA makes no mention of the group pleading doctrine, which was well-established by the time Congress enacted the PSLRA. Consequently, whether the group pleading doctrine is still viable after the PSLRA's enactment is currently a matter of debate. No federal court of appeals has addressed the issue. Nevertheless, a majority of the district courts addressing the issue have found that the group pleading doctrine survives the PSLRA . . . .

\* \* \* \* \* \*

... The majority view recognizes that the doctrine is merely a rebuttable presumption that the contents of group-published documents are attributable to corporate insiders with knowledge of, and involvement in, the day-to-day affairs of a company. Because the doctrine raises a presumption, which may be rebutted at trial or on a motion for summary judgment, and because the doctrine applies only to a limited class of corporate insiders, a majority of courts [have] been unwilling to find the doctrine inconsistent with the language of the PSLRA.

\* \* \* \* \* \*

Courts rejecting the group published doctrine do not address the convincing reason for adopting the doctrine in the first place—that it is almost impossible, without some discovery, for a plaintiff to dissect a group-published document, like an annual report, and attribute each of the statements therein to a particular corporate manager. The group published doctrine simply recognizes that there is a strong inference, based on common sense and practical experience, that a document like an annual report is a collective product of a corporation's management team. It is, however, an inference like any other drawn from a complaint, that can be rebutted by evidence. Nevertheless, a pleader is entitled to all reasonable inferences at the pleading stage. Congress' failure to address this well-established doctrine at the time it passed the PSLRA is at least some evidence that Congress did not disagree with its general application . . . .

*Id.* at 57–59 (internal citations omitted).[9]

Adopting this analysis, the Court finds that the group pleading doctrine survived the enactment of the PSLRA and applies in this case. Accordingly, Plaintiffs are not required to plead the allegedly false and misleading statements made by each individual Defendant or state specific facts demonstrating that they had the requisite scienter. Thus, the Individual Defendants' motion to dismiss on this ground is hereby denied.

4. *Whether the Complaint Satisfies the Requirements of Rule 8 and Is Not An Improper Puzzle–Style Pleading*

The Williams Defendants further argue that the Court should dismiss Plaintiffs' claims on the grounds that the Complaint fails to identify clearly, plainly, and pre-

---

**8.** *See* S.Rep. No. 104–98, reprinted at 1995 U.S.C.C.A.N. 679 and 1995 WL 372783; and H. Conf. Rep. 104–369, reprinted U.S.C.C.A.N. 730 and 1995 WL 709276 (footnote in original).

**9.** This excerpt is adopted from Report and Recommendation filed Dec. 21, 2001, in *In re CFS–Related Sec. Fraud Litig.*, Case No. 99–

CV–825–K(J), Northern District of Oklahoma. In his Report and Recommendation, Magistrate Judge Sam A. Joyner discussed more fully the cases relied on by Defendants with regard to this theory. The Court hereby adopts that reasoning and finds those cases unpersuasive for the reasons more fully set forth by Magistrate Judge Joyner.

cisely the reasons why each statement is false and misleading and that the Complaint is an improper puzzle-style pleading. (Williams Defs.' Br. at 11.)

As set forth above, the PSLRA requires a plaintiff asserting a claim under Section 10(b) to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if any allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The Williams Defendants contend that Plaintiffs have filed a "puzzle-style" pleading, defining this term to mean a pleading that "alleges a series of false and misleading statements, and a disconnected series of reasons why alleged statements are misleading, and expects defendants to decipher the claims by attempting to match alleged false statements with the reasons." (Williams Defs.' Br. at 11.)

A review of relevant court opinions reveals that district courts have struggled to deal with the complexities of class action litigation under the federal securities laws. The Williams Defendants have identified cases in which courts have dismissed complaints for failing to satisfy the requirements of section 78u–4(b)(1). *See Wenger v. Lumisys. Inc.,* 2 F.Supp.2d 1231 (N.D.Cal.1998); *Copperstone v. TCSI Corp.,* 1999 WL 33295869 (N.D.Cal.1999); *In re MCI Worldcom, Inc. Sec. Litig.,* 191 F.Supp.2d 778 (S.D.Miss.2002). Other courts, however, have been reluctant to dismiss complaints on this basis, reading the subject complaints more leniently. *See Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.,* 2 F.Supp.2d 1345 (D.Colo. 1998) (allowing claims against Ernst &

Young to proceed despite lower level of particularity pled); *Northpoint Communications Group, Inc. Sec. Litig.,* 184 F.Supp.2d 991 (N.D.Cal.2001).

▉▉▉ The Court, recognizing that the Complaint in this case arguably may lack clarity in some respects due to the number of parties and the sheer volume of information, nevertheless finds that one can discern from the Complaint what causes of action are asserted against each Defendant and the alleged factual basis for each of these causes of action. Because the Complaint provides notice to each Defendant regarding the statements and omissions that Plaintiffs allege are misleading and the reasons why those statements and omissions are misleading, the Court denies the Williams Defendants' motion to dismiss based on the argument that the Complaint is a "puzzle-style" pleading. *See generally Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (explaining that a plaintiff has complied with the federal rules "if the defendant has fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

B. *Plaintiffs' Claims Under Section 20(a) of the Exchange Act*

▉▉▉ The Williams Defendants move the Court to dismiss Plaintiffs' Section 20(a) claims on the grounds that Plaintiffs have not sufficiently pled a primary violation of the securities laws. Section 20(a) of the Exchange Act provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . ." 15 U.S.C. § 78t(a).[10] In order to state a prima facie

---

10. Section 20(a) of the Exchange Act provides in its entirety as follows:

Every person who, directly or indirectly, controls any person liable under any provi-

case of control person liability under Section 20(a) of the Exchange Act, a plaintiff must establish: (1) a primary violation of the securities laws; and (2) "control" over the primary violator by the alleged controlling person. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998) (citations omitted).[11]

As explained above with respect to Plaintiffs' Section 10(b) claims, the Court finds that Plaintiffs have sufficiently pled a primary violation of the securities laws against the Williams Defendants. The issue of whether the Williams Defendants are "control person[s]" is not challenged. Accordingly, the Court finds that both requirements under *Maher* have been met and the Court hereby denies the Williams Defendants' motion to dismiss Plaintiffs' Section 20(a) claims on this basis.

C. *Plaintiffs' Claims Under Section 11 and Section 12(a)(2) of the Securities Act*

■ Section 11 of the Securities Act "creates an express right of action for damages by securities purchasers when a registration statement contains untrue statements of material fact or omissions of material fact." 1 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 7.3 (2002); *See also* 15 U.S.C. § 77k. Section 12(a)(2) of the Securities Act imposes liability for certain material

misrepresentations and omissions made in connection with the sale of securities. 1 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 7.1 (2002) (explaining that Section 12(a)(2) "gives a rescission remedy against sellers who make material misstatements or omissions in connection with a sale"); 15 U.S.C. § 77*l*(a)(2).[12] Unlike claims under Section 10(b) of the Exchange Act, neither Section 11 nor Section 12(a)(2) requires a showing of scienter. *See* 15 U.S.C. §§ 77k, 77*l*(a)(2).

The Williams Defendants move the Court to dismiss Plaintiffs' claims under Section 11 and Section 12(a)(2) of the Securities Act, arguing that the Complaint fails to satisfy the particularity requirements with respect to these claims. The Williams Defendants argue that, because Plaintiffs' Securities Act claims are predicated on the same allegedly fraudulent and intentionally wrongful conduct as their claims under Section 10(b) of the Exchange Act, the particularity requirements of Rule 9(b) should apply.

■ The Court finds that the particularity requirements of Fed.R.Civ.P. 9(b) should not be extended to Section 11 and Section 12(a)(2) claims because those claims do not require fraud. *See* 2 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 12.13 (2002). Al-

---

sion of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
15 U.S.C. 78t(a).

**11.** A plaintiff is not required to show that the defendant actually or culpably participated in the primary violation. *First Interstate Bank v. Pring*, 969 F.2d 891, 897 (10th Cir.1992)

(rev'd on other grounds *Central Bank v. First Interstate Bank*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). "Rather, once the plaintiff establishes the prima facie case, the burden shifts to the defendant to show lack of culpable participation or knowledge." *Maher*, 144 F.3d at 1305 (citations omitted)).

**12.** Because liability under Section 12(a)(2) is not dependent upon the registration requirements of the Securities Act, Section 12(a)(2) supplements the remedy available to purchasers under Section 11.

though the circuits are split on the question of whether the heightened pleading requirements of Rule 9(b) should apply to Section 11 and Section 12(a)(2) claims grounded in allegations of fraud, the preferred approach is that they should not apply. In *Celestial Seasonings, Inc.*, the Tenth Circuit appears to adopt this approach stating that "because plaintiff is not required to have alleged fraud to establish a prima facie § 11 claim, Rule 9(b) does not apply to plaintiff's § 11 claim." *Celestial Seasonings*, 124 F.3d at 1252. Thus, this Court reads *Celestial Seasonings* to stand for the proposition that the heightened pleading requirements of Rule 9(b) do not apply to Section 11 claims because they do not require a pleading of fraud. Applying these same principles, this Court finds that Rule 9(b) pleading requirements also do not apply to claims under Section 12.

The Williams Defendants further argue that, even if the Rule 9(b) particularity requirements do not apply, Plaintiffs' allegations still fall short under the Securities Act because they do not properly allege materiality at the time the prospectuses or registration statements were filed with the § The Williams Defendants assert that Plaintiffs must demonstrate that the misstatement or omission alleged was "known and material at the time" the prospectus or registration statements were prepared. *See In re Adams Golf, Inc. Sec. Litig.*, 176 F.Supp.2d 216, 233–34 (D.Del.2001). In other words, companies are not required to disclose speculative facts which might have some unknown impact on future earnings, rather they are required to disclose material facts which are known at the time of the preparation of disclosure documents. *Id.* at 234.

As discussed earlier, materiality turns on whether "a reasonable investor would have considered the matter significant." 2 Thomas Lee Hazen, *Treatise on The Law of Securities Regulation*, § 12.9[3] (2002). In this case, Plaintiffs' allegations with regard to the January 2001 Stock Offering are set forth in paragraphs 440–463 of the Complaint. Plaintiffs allege that the Williams Defendants made misrepresentations regarding WMB's $1 billion obligation in certain transactions and misrepresentations regarding the value of EM & T's contracts, both of which allegedly resulted in the inflation of WMB's earnings. With regard to the Notes Offering, Plaintiffs' allegations are set forth in paragraphs 464–492 of the Complaint. Plaintiffs' allegations include, but are not limited to, Defendants' failure to disclose the $750 million guarantee of WCG lease obligations and the material terms of the $1.4 billion guarantee of WCG indebtedness. Allegations in connection with the FELINE PACS Offering are set forth in paragraphs 521–555 of the Complaint. Plaintiffs allege that Williams failed to disclose the estimated net exposure with regard to WCG's financial problems as well as failing to list the $375 million in accounts receivable due to WMB from WCG. Finally, allegations regarding the Barrett Resources Offering are set forth in paragraphs 493–520 of the Complaint. Plaintiffs allege that the Williams Defendants failed to include the information in this Offering regarding the $750 million and $1.4 billion guarantee described above in connection with the Notes Offering.[13] The Court finds that the Complaint sufficiently alleges misrepresentations and omissions meeting the requirement for materiality and that those

---

13. The Court observes these are only a few of the allegations contained in Plaintiffs' Complaint with regard to each of these offerings.

misrepresentations and omissions were material at the time the registration statements and prospectuses were filed. Accordingly, the Williams Defendants' motion to dismiss on this basis is hereby denied.

### D. *Plaintiffs' State Law Claims*

 The Williams Defendants move the Court to dismiss Plaintiffs' causes of action for violations of the Oklahoma Securities Act and negligent misrepresentation pursuant to the Securities Litigation Uniform Standards Act (the "SLUSA"), 15 U.S.C. §§ 77p(b) and 78bb(f). The Williams Defendants argue that, because these causes of action are based on alleged misrepresentations or omissions in connection with the sale of a "covered security," they are preempted and barred by the SLUSA.

At the April 8, 2003 hearing before the Court, Plaintiffs withdrew their causes of action under the Oklahoma Securities Act and Oklahoma common law. Accordingly the Court grants the Williams Defendants' motion to dismiss Plaintiffs' state law claims and hereby dismisses Counts Eighteen through Twenty–Nine of the Complaint.

### IV. Ernst & Young's Motion to Dismiss

### A. *Plaintiffs' Claims Under Section 10(b) of the Exchange Act*

Ernst & Young moves the Court to dismiss Plaintiffs' claims pursuant to Section 10(b) of the Exchange Act on the following grounds: (1) Ernst & Young cannot be held liable under Section 10(b) for statements contained in WMB Form 10–Qs, press releases, and other public statements; and (2) the Complaint fails to plead Ernst & Young's scienter with particularity. The Court will address each of these claims in turn below.

### 1. *Whether Ernst & Young Is Liable for Statements It Did Not Make*

 Ernst & Young argues that it cannot be held liable for statements in 10–Qs, press releases, and other public statements which are not attributable to Ernst & Young. Prior to 1994, defendants could be found liable under Section 10(b) for aiding and abetting others in violation of Section 10(b). However, in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) the Supreme Court determined that the statute should be interpreted to prohibit "only the making of a material misstatement (or omission) or the commission of a manipulative act." *Id.* The result of this decision is that only primary violators can be held liable under Section 10(b). *Id.* Therefore, to bring a claim under Section 10(b), a plaintiff must now establish that a defendant is a primary violator.

In *Anixter*, the Tenth Circuit further discussed this issue and set forth the requirements for primary violator liability under Section 10(b):

(1) that the defendant made an untrue statement of material fact, or failed to state a material fact; (2) that the conduct occurred in connection with the sale of a security; (3) that the defendant made the statement or omission with scienter; and (4) that plaintiff relied on the misrepresentation, and sustained damages as a proximate result of the misrepresentation.

*Anixter*, 77 F.3d at 1225. The Tenth Circuit has made clear that, to be held liable under Section 10(b), accountants "must themselves make a false or misleading statement (or omission) that they know or should know will reach potential investors." *Id.* at 1226. An analysis of the allegations against Ernst & Young reveals that the Complaint fails to satisfy *Anix-*

*ter*'s four requirements with regard to the 10–Qs, press releases, and other public statements made by the Williams Defendants. Absent any allegations that Ernst & Young issued opinions or assurances in connection with WMB's 10–Qs, press releases, and statements, Plaintiffs have failed to allege facts supporting primary violator liability against Ernst & Young for those statements.

The Court finds that Ernst & Young cannot be held liable for statements WMB and its officers and directors allegedly made in WMB's Form 10–Qs, press releases, and other public statements. Ernst & Young can only be held liable, as a matter of law, for statements it made itself, such as opinions on year-end financials, and WMB 10–K filings and public offerings where these opinions were used. Accordingly, Plaintiffs' claims against Ernst & Young are hereby dismissed to the extent they are premised on WMB's 10–Qs, press releases, and other public statements not made by Ernst & Young.

2. *Whether the Complaint Sufficiently Alleges Facts Establishing a "Strong Inference" of Scienter*

■ Applying the analysis set forth above with respect to the scienter pleading requirements of Fed.R.Civ.P. 9(b) and the PSLRA, the Court finds that the Complaint sufficiently sets forth allegations to establish scienter. Specifically, the Court finds that Plaintiffs have alleged that "(1) [this] defendant knew of the potentially material fact, and (2) [this] defendant knew that failure to reveal the potentially material fact would likely mislead investors." *See Fleming,* 264 F.3d at 1261. As discussed above, the knowledge requirement can be satisfied under a recklessness standard. *Id.* With respect to an accountant defendant, allegations of General Accepted Accounting Principles ("GAAP") and General Accepted Accounting Standards ("GAAS") violations, coupled with other allegations which suggest fraudulent intent are adequate to support an inference of scienter. *Id. See also, Anixter,* 77 F.3d at 1226; *In re Westinghouse Sec. Litig.,* 90 F.3d 696 (3d Cir.1996)

■ In the instant case, Plaintiffs have sufficiently pled allegations establishing an inference of scienter as required by *Fleming.* The Complaint sets forth allegations which draw into question Ernst & Young's motive and independence based on the fact that its consulting fees from WMB were far greater than the fees received from WMB for auditing services. Also, Plaintiffs point out and question how Ernst & Young could not have been aware of the alleged misstatements and omissions with regard to WMB's financial statements based on the high level of interaction between WMB and Ernst & Young during the Class Period. Specific allegations of GAAP and GAAS violations are also set forth in the Complaint. For example, Plaintiffs allege GAAP violations including Ernst & Young's failure to recognize WMB's obligations under WCG guarantees and the overstatement of asset valuations and revenues by manipulation of pricing curves. (Lead Pls.' Opp. to E & Y's Mot. to Dismiss at 14.)

In addition to these violations, Plaintiffs allege that Ernst & Young disregarded numerous "red flags," such as increased bonus compensation of EM & T traders based on subjective projections and EM & T's use of risk free discount rate. *Id.* Finally, the Complaint sets forth allegations of conduct which Plaintiffs claim no reasonable accountant would have allowed. For example, Plaintiffs contend, among other things, that Ernst & Young wrongfully consented to the use of its 2000 Audit Report in offerings without disclosing additional information and failed to adjust

inflated installed capacity contracts when WMB records revealed that these values were inflated. *Id.*

The Court finds that these allegations satisfy the particularity requirements of Fed.R.Civ.P. 9(b) and the pleading requirements necessary to state a claim under Section 10(b) of the Securities Exchanges Act, including the particularity requirements of the PSLRA. Accordingly, Ernst & Young's motion to dismiss on this basis is hereby denied.

**B.** *Plaintiffs' Claims Under Section 11 of the Securities Act*

Ernst & Young moves the Court to dismiss Plaintiffs' claims pursuant to Section 11 of the Securities Act. Ernst & Young argues, as it did with respect to Plaintiffs' Section 10(b) claims, that it cannot be held liable under Section 11 for statements contained in WMB Form 10–Qs, press releases, and other public statements.[14]

Section 11 of the Securities Act of 1933 creates a right of action for any person acquiring a security when any part of the registration statement contains an untrue statement of material fact or omission. 15 U.S.C. § 77k(a). An accountant is subject to suit if he has consented and "been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports

to have been prepared or certified by him." 15 U.S.C. § 77k(a)(4).

In their Complaint, Plaintiffs' allegations of violations of Section 11 by Ernst & Young are contained in Count VIII (The Notes Offering), Count XI (FELINE PACS Offering), and Count XIV (The Barrett Resources Offering). Ernst & Young's motion to dismiss does not address its liability as to these offerings. Rather, Ernst & Young requests a determination as to liability for statements not attributable to Ernst & Young, specifically statements contained in WMB Form 10–Qs, press releases, and other public statements not attributable to Ernst & Young.

 The plain language of Section 11 requires that in order for an accountant to be liable there must be a registration statement, or a report or valuation used in connection with a registration statement, that is prepared or certified by that accountant. Furthermore, that accountant's liability under Section 11 is limited to only "those portions of the statement that purport to have been prepared or certified by the accountant." *Monroe v. Hughes,* 31 F.3d 772, 774 (9th Cir.1994) (citing *Herman & MacLean v. Huddleston,* 459 U.S. 375, 386 n. 22, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)). Applying these requirements to Ernst & Young's request for dismissal of the statements contained in WMB Form 10–Qs, press releases, and other public statements not attributable to Ernst & Young, the Court finds that such a dis-

---

14. Ernst & Young also moves to dismiss Plaintiffs' Section 11 claims asserted on behalf of purchasers of the stock issued pursuant to the August 2, 2002 merger of Barrett Resources Corporation into WMB (the "Barrett Resources Offering"). Ernst & Young argues that this claim should be dismissed because Plaintiffs have failed to allege that any named plaintiff purchased securities in or traceable to the Barrett Resources Offering.

On February 25, 2003, however, as agreed by the parties, the Court granted Plaintiffs leave for David Schultz, a purchaser of securities in or traceable to the Barrett Resources Offering, to be added as a named Plaintiff. Accordingly, the Court hereby denies as moot Ernst & Young's motion to dismiss Plaintiffs' Section 11 claims based on the Barrett Resources Offering.

missal is warranted.[15] Accordingly, this aspect of Ernst & Young's motion to dismiss is hereby granted.

### C. *Plaintiffs' State Law Claims*

Ernst & Young also moves the Court, pursuant to the SLUSA, 15 U.S.C. §§ 77p(b) and 78bb(f), to dismiss Plaintiffs' causes of action for violations of the Oklahoma Securities Act and negligent misrepresentation. As noted above, Plaintiffs withdrew the causes of action asserted against Ernst & Young under the Oklahoma Securities Act and Oklahoma common law at the April 8, 2003 hearing. Accordingly the Court grants Ernst & Young's motion to dismiss Plaintiffs' state law claims and hereby dismisses Counts Eighteen through Twenty–Nine of the Complaint to the extent they are asserted against Ernst & Young.

### V. The Underwriter Defendants' Motion to Dismiss

### A. *Plaintiffs' State Law Claims*

The Underwriter Defendants also move the Court to dismiss Plaintiffs' causes of action for violations of the Oklahoma Securities Act and for negligent misrepresentation pursuant to the SLUSA, 15 U.S.C. §§ 77p(b) and 78bb(f). As described above, because Plaintiffs withdrew their causes of action under the Oklahoma Securities Act and Oklahoma common law for negligent misrepresentation at the April 8, 2003 hearing, the Court grants the Underwriter Defendants' motion to dismiss Plaintiffs' state law claims and hereby dismisses Counts Eighteen through Twenty–Nine of the Complaint to the extent they are asserted against the Underwriter Defendants.

### B. *Plaintiffs' Claims Under Section 11 and Section 12(a)(2) of the Securities Act*

The Underwriter Defendants move the Court to dismiss Plaintiffs' claims under Section 11 and 12(a)(2) of the Securities Act on the following grounds: (1) Plaintiffs have violated the "simple, concise, and direct" mandate of Fed.R.Civ.P. 8; and (2) Plaintiffs have failed to plead the required elements under Section 11 and 12(a)(2).

### 1. *Whether the Complaint Satisfies the Requirements of Fed.R.Civ.P. 8*

■ Rule 8(a) provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This requirement is supplemented by the Rule 8(e) which states that "[e]ach averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). The determination of proper length and required clarity of a pleading cannot be defined with any precision and is generally left to the trial court's discretion. 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1217, at 175 (2d ed.1990); *Double v. United States,* Case No. 97–1316, 1998 WL 327747, at *1 (10th Cir. June 18, 1998) (unpublished opinion) (recognizing the discretion afforded to district judges whether to dismiss complaints for failure to comply with Rule 8). Generally, a district court's discretion is only exercised "for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Gibson v. City of Cripple Creek,* Case No. 94–1168, 1995 WL 94483, at *1 (10th Cir. Mar.1, 1995) (unpublished opinion) (citing

---

**15.** This dismissal is limited to the statements which are not attributable to Ernst & Young and does not address the allegations con-

tained in Counts VIII, XI, and XIV of Plaintiffs' Complaint.

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir.1988)).

In the instant case, the Underwriter Defendants allege that Plaintiffs' Complaint "wholly fails to conform with the letter and spirit of Rule 8." (Underwriter Defs' Br. at 5.) The Underwriter Defendants place significant emphasis on the length of Plaintiffs' Complaint, which contains over 200 pages of text. However, "it should be noted that Rule 8(a)(2) speaks of a short and plain statement of each claim, not a short and plain pleading." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1217, at 169 (2d ed.1990).

The Supreme Court has held that a plaintiff has complied with the federal rules "if the defendant has fair notice of what the plaintiff's claim is and the grounds upon which its rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. Further, adequate notice depends on the circumstances of each case, and in complex cases, the complaint will be more extended and may require greater particularity. *Mountain View Pharmacy v. Abbott Lab.*, 630 F.2d 1383, 1387 (10th Cir.1980) (citing 2A James Wm. Moore et al., *Moore's Federal Practice* ¶ 8.13, at 8–124, 125 (2d ed.1979)).

In this case, the claims are necessarily complicated, involving multiple defendants who played multiple roles in the alleged securities violations forming the basis for this litigation. As stated above with respect to the Williams Defendants' argument that the Complaint should be dismissed because it is a "puzzle-style" pleading, the Court finds that the Complaint identifies each Defendant or group of Defendants, the misconduct or fraud alleged, and the securities laws which Defendants allegedly violated. Therefore, because the claims against the Underwriter Defendants are ascertainable, the Court finds that Underwriter Defendants have received the notice contemplated by *Conley*. For these reasons, the Underwriter Defendants' motion to dismiss on Rule 8 grounds is hereby denied.[16]

2. *Whether Plaintiffs Have Satisfied the Pleading Requirements for Claims Under Section 11 and Section 12(a)(2) of the Securities Act*

The Underwriter Defendants move the Court to dismiss Plaintiffs' claims under Section 11 and Section 12(a) of the Securities Act for failing to plead the required elements. As explained above, Section 11 "creates an express right of action for damages by securities purchasers when a registration statement contains untrue statements of material fact or omissions of material fact." 1 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 7.3 (2002); 15 U.S.C. § 77k. Section 12(a)(2) of the Securities Act imposes liability for certain material misrepresentations and omissions made in connection with securities sales. 1 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 7.1 (2002); 15 U.S.C. § 77*l*(a)(2). Section 12(a)(2) supplements the remedy available to purchasers under Section 11.

■ Under Section 11, a buyer can sue for damages when a security has been purchased and there has been a false and misleading registration statement. *See Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir.1994); 15 U.S.C. § 77k(a). In the instant case, the Court finds that Plaintiffs

---

**16.** The Court observes that complete dismissal of a plaintiff's claims with prejudice is a remedy that is generally used only after a plaintiff fails to comply with court orders regarding Rule 8 violations. *See Westing-house Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996); *Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437, 439 (8th Cir.1983); *Kuehl v. FDIC*, 8 F.3d 905, 908–09 (1st Cir.1993).

have pled allegations necessary to meet the requirements for suit under Section 11 in order to survive a motion to dismiss. Under Section 12(a)(2), a buyer, who is in privity with a seller, only needs to establish that a material misstatement or omission was contained in a prospectus or oral communication. *See In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 318 (8th Cir.1997). No pleading of reliance on the part of the purchaser is necessary. *Id.* Plaintiffs, who are purchasers of securities as a result of offerings in which the Underwriter Defendants partook, have alleged material misstatements and omissions which were contained in prospectuses. The Court finds that the allegations stated in the Complaint with respect to Plaintiffs' Section 12(a)(2) are sufficient to survive a motion to dismiss. Accordingly, the Court hereby denies the Underwriter Defendants motion to dismiss Plaintiffs' Section 11 and Section 12(a)(2) claims.

## VI. John C. Bumgarner, Jr.'s Motion to Dismiss

### A. *Plaintiffs' Claims Under Section 10(b) of the Exchange Act*

Defendant John C. Bumgarner moves the Court to dismiss Plaintiffs' claims pursuant to Section 10(b) of the Exchange Act on the basis that the Complaint fails to allege with requisite particularity that Mr. Bumgarner made false and misleading statements or that he had the requisite scienter. Because, as set forth above, the group pleading doctrine survives the enactment of the PSLRA, the Court finds that the allegations of material misstate-

ments or omissions asserted against WMB apply to Mr. Bumgarner, just as they do to other corporate insiders, at this motion to dismiss stage of the proceedings. Based on the group pleading doctrine and giving all reasonable inferences to the Plaintiffs, the Court denies Mr. Bumgarner's motion to dismiss the Section 10(b) claims against him.[17]

### B. *Plaintiffs' Claims Under Section 11 and 12(a)(2) of the Securities Act*

Mr. Bumgarner moves the Court to dismiss Plaintiffs' claims under the Securities Act for the following reasons: (1) he cannot be liable under Section 11 because he did not sign, nor is alleged to have signed, any registration statement containing any allegedly false or misleading statement; and (2) he cannot be liable under Section 12(a)(2) because he is not a "seller" of a security as defined by the Act. Plaintiffs state, in their response brief, that "Bumgarner is not alleged in the Amended Complaint to have primary liability under Sections 11 or 12(a)(2) of the 1933 Act." (Lead Pls.' Opp'n to John C. Bumgarner, Jr.'s Mot, to Dismiss at 21.) Accordingly, to the extent the Complaint asserted causes of action against Mr. Bumgarner under Section 11 and Section 12(a)(2) of the Securities Act, the Court hereby grants Mr. Bumgarner's motion to dismiss these claims.

### C. *Plaintiffs' Claims Under Section 20(a) of the Exchange Act and Section 15 of the Securities Act*

Mr. Bumgarner moves the Court to dismiss Plaintiffs' claims for control person

---

**17.** Mr. Bumgarner also moves the Court to dismiss Plaintiffs' Section 10(b) claims on the ground that the Complaint fails to identify a single false or misleading statement by WMB in connection with the sale of securities of WMB. For the reasons set forth above with respect to the Williams Defendants, however, the Court finds that the Complaint specifically alleges material misstatements and omissions attributable to WMB and its officers and sufficiently pleads facts establishing an inference of scienter. Accordingly, the Court denies Mr. Bumgarner's motion to dismiss Plaintiffs' claims under Section 10(b) of the Exchange Act on this ground.

liability pursuant to both Section 20(a) of the Exchange Act and Section 15 of the Securities Act, arguing that Plaintiffs have not alleged facts demonstrating primary liability attributable to WMB.[18] As set forth above, the Court finds that Plaintiffs have sufficiently alleged facts supporting claims against WMB for primary liability under both the Exchange Act and the Securities Act. Accordingly, the Court hereby denies Mr. Bumgarner's motion to dismiss Plaintiffs' Section 20(a) and Section 15 claims.

## CONCLUSION

For the foregoing reasons, the Court finds as follows: (1) The Williams Defendants' Opening Brief in Support of Their Motion to Dismiss the Consolidated Amended Class Action Complaint on Behalf of Purchasers of WMB Securities (Docket No. 223) is granted in part and denied in part. The motion to dismiss the state law claims is granted and Counts Eighteen through Twenty–Nine of the Complaint are hereby dismissed. All remaining sections of the motion to dismiss are hereby denied. (2) Defendant Ernst & Young LLP's Motion to Dismiss Consolidated Amended Complaint (Docket No. 231) is granted in part and denied in part. The motion to dismiss Section 10(b) and Section 11 claims as they relate to Form 10–Qs, press releases, and other public statements not attributable to Ernst & Young is granted. Additionally, the motion to dismiss the state law claims is granted and Counts Eighteen through Twenty–Nine of the Complaint are hereby dismissed. All remaining sections of the motion to dismiss are hereby denied, (3) The Underwriter Defendants' Motion to Dismiss and Brief in Support (Docket No. 234) is granted in part and denied in part.

The motion to dismiss the state law claims is granted and Counts Eighteen through Twenty–Nine of the Complaint are hereby dismissed. All remaining sections of the motion to dismiss are hereby denied. (4) John C. Bumgarner, Jr.'s Motion to Dismiss and Supporting Brief (Docket No. 233) is granted in part and denied in part. The motion to dismiss Section 11 and Section 12(a)(2) claims to the extent they were asserted against Mr. Bumgarner in the Complaint is hereby granted. All remaining sections of the motion to dismiss are hereby denied.

IT IS SO ORDERED.

---

**18.** Although worded differently, the control person provisions in Section 15 and Section 20(a) are interpreted the same, *Maher*, 144 F.3d at 1305 n. 7.